48  323
97  401

[No. 10,048.]

## THE PEOPLE *v.* ROBERT CAGE.

WHEN PERSON ACCUSED OF CRIME IS "IN JEOPARDY."—When a person is placed on trial upon a valid indictment, before a competent Court and

a jury, he is in jeopardy within the meaning of the constitutional provision which declares that " no person shall be subject to be twice put in jeopardy for the same offense."

IDEM.—In such case, the discharge of the jury without verdict, unless by consent of the defendant, or from some unavoidable accident or necessity, is equivalent to an acquittal.

IDEM.—Among these unavoidable necessities are the inability of the jury to agree after a reasonable time for deliberation, and the close of the term of the Court.

DISCHARGE OF JURY IN CRIMINAL CASE.—The discretion of the Court in the discharge of a jury for inability to agree must be exercised upon some kind of evidence, and the judgment of the Court on the point should be expressed in some form upon the record.

IDEM.—A report made by the Sheriff to the Court that the jury say they are unable to agree, is not evidence upon which the Court can act in discharging the jury for inability to agree. The proper course is to call the jury into Court, and have them announce their inability in the presence of the Court.

WHEN DISCHARGE OF JURY AMOUNTS TO AN ACQUITTAL.—If, while a jury is out deliberating upon their verdict in a criminal case, and before the expiration of the term, the Judge, without calling the jury into Court, adjourns the Court for the term, it is equivalent to an acquittal of the defendant.

DEFENSE UNDER PLEA OF NOT GUILTY.—An acquittal of a defendant in a criminal case by a discharge of the trial jury without a verdict, may be given in evidence on a subsequent trial of the defendant, under a plea of not guilty.

APPEAL from the District Court, Seventeenth Judicial District, Los Angeles County.

The defendant appealed.
The other facts are stated in the opinion.

*Kewen & Howard*, for Appellant, argued that the defendant had been in "jeopardy" at the first trial within the meaning of the words as found in article five of the Amendments to the Constitution of the United States, and section eight of article one of the Constitution of this State; and cited *Com.* v. *Cook*, 6 Serjt. & R. 595; Bishop's Crim. Law, vol. 1, secs. 856, 858, 859 and 870; *People* v. *Webb*, 38 Cal. 477; and that the defendant, having been in jeopardy, was acquitted; and cited *State* v. *Ephraim*, 2 Dev. & Bat. 162; *State ex rel. Battle*, 7 Ala. N. S.; Bishop's Crim. Law, Sec. 873, The Williams Case, 2 Gratt. 567. They also argued

that, under section one thousand and sixteen of the Penal Code. The proceedings on the former trial should have been received in evidence under the plea of not guilty.

*John L. Love, Attorney-General,* for the People, argued that the information given by the Sheriff, to the Court, was evidence upon which the Court could act; as he was an officer of the Court who had charge of the jury, and whose duty it was to ask them if they had agreed on their verdict; and cited *Com.* v. *Olds,* 5 Littell Ky. 137; *Dobbins* v. *The State,* 14 Ohio, 493; and *Charlotte Winsor* v. *The Queen,* 1 Q. B. 289. He also argued that the Penal Code did not make it the duty of the Court to enter upon its minutes the reasons which controlled it in discharging a jury, and cited Penal Code, Secs. 1139 and 1140.

By the Court, NILES, J.:

The defendant was tried and convicted in the District Court for the County of Los Angeles, in the month of April, 1873, of the crime of murder in the first degree. The leading question made upon the appeal relates to the legal effect of the proceedings had at a former trial of the cause in the same Court, at the June term, 1872. These proceedings, as shown by the Bill of Exceptions, were as follows: The case was regularly brought on for trial at that term. A jury was duly empaneled and sworn; evidence was introduced, and the case was submitted to the jury on the 30th of July. The jury remained together until the evening of the 2d of August. The proceedings of that day, so far as they pertain to the question before us, are shown by the following extract from the minutes of the Court:

"In this cause, counsel for the defense having been called and appearing, (counsel for plaintiff failing to answer,) in open Court, the Court ordered the Sheriff to proceed to the door of the jury-room where the jury in this case were under deliberation, and inquire of them if they had agreed upon a verdict, to which they replied that they 'had not, and could not agree on a verdict,' and the Sheriff

thereupon reported their said reply to the Court. Whereupon the Court was ordered to be adjourned for the term and the same was accordingly done by the Sheriff."

The term would not have expired by operation of law until the evening of the ensuing day.

The defendant's counsel offered to prove the foregoing facts in support of a motion for a judgment of acquittal and discharge, made at the time the defendant was put upon his second trial. The motion having been denied, the defendant's counsel tendered a plea reciting substantially the same facts, which plea the Court refused to accept. At the trial the defendant offered to prove the same facts under the plea of not guilty, and the testimony was excluded by the Court.

There is no doubt as to the general rule that whenever a person has been placed upon trial, upon a valid indictment, before a competent Court, and a jury empaneled, sworn and charged with the case, he is then in jeopardy within the meaning of the constitutional provision which declares that "no person shall be subject to be twice put in jeopardy for the same offense;" and that the discharge of the jury without verdict, unless by consent of the defendant, or from some unavoidable accident or necessity, is equivalent to an acquittal. Among these unavoidable necessities are recognized the inability of the jury to agree after a reasonable time for deliberation, and the close of the term of the Court. Unquestionably this defendant was placed in jeopardy at the first trial, and is entitted to the protection of the constitutional provision, unless one or the other of these necessities existed.

1. The power of the Court to discharge a jury by reason of their inability to agree upon a verdict, is undisputed. It was so held in the case of *Ex parte McLaughlin*, (41 Cal. 212.) But it was also held that "it must be exercised in accordance with established legal rules, and sound legal discretion in the application of such rules to the facts and circumstances of each particular case." It is evident that in a matter so gravely affecting the life or liberty of the accused, the discretion of the Court should be exercised

upon some kind of evidence, and its judgment should be expressed in some form upon the record. In this case there was no evidence upon which the Court was authorized to act, and no apparent adjudication. The Sheriff was ordered "to proceed to the door of the jury-room and inquire of them if they had agreed upon a verdict." The extent of his official duty was to receive their reply to this question, and report it to the Court.

His report of the further answer of the jury that they " could not agree on a verdict," was extra official, and was no evidence whatever upon which the Court could act. If the jury were in fact unable to agree, they should have been called into Court, and have announced their inability in the presence of the Court and of the defendant. In the absence of this, or some equivalent showing, the Court was not authorized to make an order of discharge upon this ground.

Nor was there any adjudication whatever upon this subject. It does not appear to have been determined by the Court in any way that the jury were unable to agree. There was no order of discharge of the jury, other than that resulting from the adjournment of the Court for the term. There is nothing in the case to show the existence of that inability to agree, which has been held to constitute that necessity which authorizes a discharge of a jury before verdict, and deprives the accused of his exemption from a second trial.

2. There is no doubt that the adjournment of the Court for the term operated to discharge the jury. That effect is given to a final adjournment by section four hundred and thirteen of the Criminal Practice Act, under which this trial was had. Nor can there be any doubt of the power of the Court to adjourn finally before the expiration of the term limited by statute for its continuance. But it is claimed by the counsel for appellant that there was in this case no such legal necessity for the adjournment, and the consequent discharge of the jury, as would prevent him from insisting upon his former jeopardy, in bar of a second trial. And in this we agree with the counsel.

Whenever the time fixed by law for the expiration of a term arrives, the powers of the Court for that term are at an end by operation of law, and the powers of the jury must terminate with those of the Court to which it was attached. Here the legal necessity for the discharge is apparent, and has been frequently recognized by the Courts. It is placed upon the same footing as a discharge occasioned by the illness or death of a juryman or of the judge. But there is, presumably, no necessity for the final adjournment of the Court before the fixed limit of the term is reached. If such an adjournment is had pending the trial of a criminal cause, the necessity must exist and should appear, in order to rebut the presumption of jeopardy arising from the fact of the trial. If this were otherwise, the Court might be adjourned immediately after the jury had retired from the box, and before an agreement was possible. The right which the Constitution intends to assure to the accused, when put upon trial—to either have a verdict rendered in his case, or go free—would be made to depend upon the arbitrary discretion of the judge.

Mr. Bishop, in his work upon criminal law, after an exhaustive review of the authorities, and a discussion of the whole subject, arrives at these conclusions: "Whenever, after a trial has commenced, whether for misdemeanor or for felony, the Judge discovers any imperfection which will render a verdict against the defendant either void or voidable by him, he may stop the trial, and what has been done will be no impediment in the way of any future proceedings. Whenever, also, anything appears showing plainly that a verdict cannot be reached within the time assigned by law for the. holding of the Court, he may adjudge this fact to exist, and on making the adjudication matter of record, stop the trial, with the like result as before. But without the adjudication, the stopping of the trial operates to discharge the prisoner. In other words, when the record shows the defendant to have been in actual jeopardy, he is protected thereby from further peril for the same alleged offense. But when it shows also, in addition to this, something which disproves the peril, it does not show the

peril, whatever else it shows, and, therefore, it does not protect him." (1 Bish. Cr. Law, Section 873.)

These views are fully justified by the authorities cited in their support, and the conclusions cannot well be avoided. We are of the opinion that the discharge of the jury at the first trial of this cause was equivalent to a verdict of acquittal, and it only remains to determine in what manner the defendant should be permitted to avail himself of the right.

By section one thousand and sixteen of the Penal Code, three kinds of pleas to an indictment are provided for: First, guilty; second, not guilty; third, a former judgment of acquittal, or conviction of the offense charged. The defense that the defendant has been before in jeopardy, if it be, as we hold, sufficient, must be taken advantage of under one or the other of these pleas. It would seem that the more convenient method of interposing a defense of this nature would be by a plea analagous to a plea of former acquittal, of which it is said to be the equivalent. But we find no authority in the statute for a plea of this kind. The case falls rather within the purview of section one thousand and twenty of the Penal Code, which declares that "all matters of fact tending to establish a defense, other than that specified in the third subdivision of section one thousand and sixteen, may be given in evidence under the plea of not guilty." We hold, that under the plea of not guilty, the evidence of the facts attending the first trial, as disclosed by the record, should have been received. For the error of the Court in rejecting this evidence, the judgment must be reversed, and the cause remanded for a new trial; and it is so ordered.

Wallace, C. J., dissenting:

The former trial of this cause took place in June, 1872, and the case was given to the jury on the 30th of July, and on the same day they returned into Court for further instructions, which, being given, they again retired to deliberate upon their verdict; but on the same day re-ap-

peared in Court and stated their inability to agree upon a
verdict, but the Court then declined to discharge them.
Their deliberations continued during the 31st day of July,
and until the first day of August, on which day they again
appeared in Court and announced to the Court that they
could not agree upon a verdict, and that they saw no
chance for an agreement. The Court offered to repeat
to them the instructions already given, but they, not
desiring to again hear the instructions, were again sent out
for further deliberations. On August 2d, it having been
reported to the Court that one of the jurors was too ill to
serve further, the jury were again brought into Court,
when, it appearing that the indisposition of the juror was
not of a serious character, the jury were again sent out for
further deliberation. At 7:20 P. M. of the same day, the
jury, not having returned a verdict, the Court sent the
Sheriff to enquire of them if they had yet agreed upon a
verdict, and that officer reported to the Court, that the
jury " had not and could not agree on a verdict." Upon
the receipt of this information the Court was adjourned for
the term, which adjournment, of course, operated a dis-
charge of the jury. Undoubtedly it would have been bet-
ter practice to have called the jury into open Court, and
there discharged them in the due and usual form of law;
and had that been done, and had the Court entered it of
record that they were discharged, because of their inability
to agree upon a verdict, I do not understand that, in the
view of my associates, such a discharge would have oper-
ated as a bar to further proceedings on the indictment by
the empaneling of another trial jury, for the jury had de-
liberated of their verdict from the 30th of July to the 2d
of August, inclusive—some four days in all. Their dis-
charge under such circumstances, if regularly made and
entered of record, could not have been rightfully com-
plained of by the prisoner, nor would it have operated to
free him from further prosecution before another jury
thereafter.

If, then, upon these facts actually transpiring at the first
trial, and which were then entered and now appear of record,

the District Court would have been justified in discharging the jury by an order entered in due form, I think that the prisoner cannot allege jeopardy merely because of the irregular manner in which the discharge of the jury was effected in this case. The substance of the whole proceeding is, in short, that it distinctly appeared to the District Court that the jury had not agreed after some four days actual deliberation; and it further appeared that at the time of the discharge of the jury there was no probability of their agreeing; and I am of opinion that an order made under these circumstances, which operated their discharge, must be considered to have been made (even though not so expressed in form) because of their ascertained inability to agree upon a verdict, and that, upon settled principles of law, a discharge of the jury under such circumstances should not operate an acquittal of the prisoner.

I must, therefore, dissent from the opinion of my associates upon this point.

The foregoing opinions were delivered at the January term, 1874. A rehearing was granted, and, at the July term, 1874, the following opinion was delivered:

By the Court, Niles, J.:

Upon rehearing, we are satisfied with the views expressed in the former opinion in this case, and the order then made will stand as the judgment of the Court.

Mr. Chief Justice Wallace delivered the following dissenting opinion, in which Mr. Justice Rhodes concurred:

I dissent from the judgment of the majority, for the reasons given in my dissenting opinion heretofore filed in this case.