## Ex Parte A. W. MAXWELL.

Jeopardy—When it Attaches.—Whenever the accused has been placed upon trial, upon a valid indictment before a competent court, and a jury duly impaneled, sworn and charged with the case his jeopardy attaches, and the discharge of the jury before verdict, unless with the consent of the defendant, or the intervention of some unavoidable accident or some overruling necessity, operates as an acquittal.

Idem—Jury Failing to Agree.—The inability of the jury to agree upon a verdict is recognized as creating a necessity that justifies the discharge of the jury.

When Jeopardy does not Attach.—Whenever a trial has commenced, whether for misdemeanor or felony; and the judge discovers any imperfection which will render a verdict void or voidable by him, he may stop the trial, and what has been done will be no impediment in the way of any future proceedings.

IDEM.—Whenever anything appears showing plainly the fact that a verdict cannot be reached within the time assigned by law for the holding of the court, he may adjudge this fact to exist, and on making the adjudication matter of record, stop the trial, with the result above stated.

POWER OF COURT TO DISCHARGE A JURY BEFORE VERDICT.—The power of the court to discharge a jury, without the consent of the defendant, is not an absolute power, but must be exercised in accordance with established legal rules and a sound legal discretion in the application of such rules to the facts and circumstances of each particular case.

IDEM—ADJUDICATION OF RECORD.—The facts and circumstances which induce the discharge of the jury, and an adjudication thereon, ought to be stated and appear in the record.

IDEM.—Where the only ground appearing was, that the foreman of the jury stated "they were unable to agree upon a verdict:" Held, that this was not sufficient ground to authorize the court to discharge the jury. The fact that the jury could not agree is an essential fact, the existence of which ought to be determined by the court and established by the record.

HABEAS CORPUS.—The writ of habeas corpus is not intended to have the force or operation of an appeal, writ of error, or certiorari; nor is it designed as a substitute for either.

IDEM—DISCHARGE OF DEFENDANT.—Where there has been a legal jeopardy, it is equivalent to a verdict of acquittal; and, on motion, the prisoner is entitled to his discharge; but the writ of habeas corpus will not lie.

HABEAS CORPUS before the Supreme Court.

The facts are stated in the opinion.

*A. B. Hunt and T. W. W. Davies,* for Petitioner.

The petitioner is entitled to be discharged. The discharge of the jury, on motion of the state, without the consent of defendant, was equivalent to a verdict of acquittal. (*State* v. *Callendine,* 8 Iowa, 288; *Commonwealth* v. *Clue,* 3 Rawle, 498; *Commonwealth* v. *Cook et al.,* 6 S. and Rawle, 577; *Wright* v. *State,* 5 Ind. 290; *Mahala* v. *State,* 10 Yerger, 533 and cases cited; *People* v. *Webb,* 38 Cal. 467, and cases cited; Hurd on Hab. Corp., 330, 333; *People* v. *McLeod,* 25 Wend., 570–72; Comp. Laws, secs. 363–64, 368; Hab. Corp. Act, secs. 15, 16, 20; *People* v. *Martin,* 1 Parker's Cr. Rep., 187, and cases there cited; *People* v. *Tompkins,* 1 Par. Cr. Rep., 224; *State* v. *Ward,* 3 Halst., N. J. 120; *Ex parte Bollman & Swartwout,* 4 Cranch, 75; *State* v. *Stanley,* 4 Nev. 113.)

*J. R. Kittrell, Attorney-General,* for the State.

I. The inquiry of the court is limited on *habeas corpus* to the existence, validity, and present legal force of the process. (Hurd on Hab. Corp. 331, 345.)

II. The discharge of a jury sworn to try a criminal case, is purely within the discretion of the judge who presides at the trial, and the statute in express terms constitutes him the exclusive judge as to the time when such a charge shall ensue. Whenever it shall satisfactorily appear to the court that there is no probability that the jury can agree upon a verdict, then the judge may order them discharged. There is no period of time prescribed by law for a jury to deliberate, and when they are ordered discharged for failure to agree upon the verdict, the presumption is that it appeared to the satisfaction of the court that there was no reasonable probability of an agreement. (Comp. L., secs. 2020–21.)

III. If the discharge of the jury in this case at the second trial was equivalent to acquittal, the remedy is not by *habeas corpus*, it is by motion, or plea. At a subsequent trial, petitioner could move his discharge, or plead former acquittal, and if the motion were overruled and the plea not accepted, then an appeal would lie. (41 Cal. 211.) For the practice on this point see *People* v. *Cage* (48 Cal. 326.)

By the Court, EARLL, J.:

It is alleged in the petition presented on behalf of Maxwell, that he is unlawfully imprisoned and restrained of his liberty by one Andrew Fife, the sheriff of the county of Lincoln.

The facts as presented by the petition, return of the sheriff and proofs submitted are substantially as follows: The prisoner was accused of having stolen twenty-two pieces of crude bullion, at said Lincoln county, of the alleged value of twenty-two hundred dollars, gold coin, the property of the Meadow Valley Mining Company, a corporation. He was arrested on said charge in the territory of Utah, the latter part of June, 1875, upon the requisition of the governor of this state, and on or about the first day of July delivered into the custody of said sheriff. That

while he was thus in custody, and at the July term of the
district court, held in and for said county, the grand jury
found and presented an indictment charging him with the
commission of said crime, and upon which indictment he
was put upon his trial at the succeeding October term of
said court; but the jury failing to agree upon a verdict,
were discharged by the court, and the judge of said court
thereupon, of his own motion, continued the cause for
trial until the next term of the court, to be held in January,
1876. At the time the jury were thus discharged, the
jurors stood seven for not guilty and five for guilty. At
the January term of 1876 of said court, the prisoner was
again brought to trial upon said indictment. A jury was
regularly impaneled to try the case. The evidence and
arguments of counsel were closed on the fourth day of
March, and having received the instructions of the court,
the jury retired in charge of the sheriff, duly sworn, to
consider of their verdict. In less than three hours after
the cause had thus been submitted, the jury returned into
court, and by their foreman stated they were unable to
agree upon a verdict; whereupon the court, against the
objection of the prisoner and his counsel, discharged the
jury from further consideration of the case. The entry in
the minutes of the court is as follows: "The evidence
being closed, after argument, the court instructed the jury,
and they retired in charge of the sheriff duly sworn, and
subsequently returned into court, and by their foreman
stated they were unable to agree upon a verdict; where-
upon the court discharged the jury from further considera-
tion of the case. On motion the bail of the defendant is
reduced from $5,000 to $3,000, to be approved by the
court." It is alleged in the petition that when said jury
were discharged, they stood nine for not guilty and three
for guilty, and that they were discharged without legal
necessity. It does not appear that any further proceedings
were had in the case until the next term of the court. On
the tenth day of April, 1876, and of the April term of the
court the cause was again called for trial, and the court
proceeded to impanel a jury to try the same. The jurors

in attendance were called, sworn and examined as to their qualifications, and upon such examination, nine jurors were found competent, and left in the box subject to peremptory challenges.  The panel being then exhausted, the said nine jurors were duly admonished by the court; and after being notified to be in attendance on the succeeding twelfth day of April, were permitted to separate, and then, by order of the court twenty-three additional jurors were drawn and a venire issued therefor, returnable on the said twelfth day of April, to which time the court adjourned.

The court convened on the said twelfth day of April, and the venire for the additional jurors having been duly returned, the roll of the jury was called, and the nine jurors who had been previously passed, subject to peremptory challenge, and nearly, if not all of the additional jurors summoned, were present.  The court thereupon, of its own motion, called Andrew Fife, sheriff of said county, who, being sworn, testified:  ''That he could not find any person in the town who was willing to board or lodge the jury during the trial of this cause, and that he had used the utmost endeavors to do so, but had failed; that he could not get board or lodging for the jury, and knew of no way by which it could be obtained.

The bill of exceptions annexed to the petition, after reciting the above testimony, proceeds: ''The court knowing the fact that two trials had been previously had, the first of which occupied twelve days, and the second six days, including night sessions, and that the trial about to take place would take as much time as the last trial, it made the following order, to wit: ''Whereupon the court orders that the trial of said cause be continued until Monday, May 1, A. D. 1876, or until the further order of this court, and the jurors in the box are discharged from the further consideration of the case;'' counsel for defendant entered his exception.  Counsel for defendant then demanded that the trial proceed at once, which the court refused; to which ruling '' counsel for the defendant then and there excepted.'' On the succeeding nineteenth day of April, the defendant, on an affidavit setting forth the proceedings had in his case,

substantially as above stated, and also that the county of Lincoln does now, and has for some months last past, refused to furnish lights, fuel or food for affiant; that he has been kept in said jail at the expense of the Meadow Valley Mining Company, as to lights, food and fuel during said time last as aforesaid, and is still being so kept;" and that he had endeavored to procure bail, but was unable to do so; and upon notice to the district attorney, applied to said district court to be released from custody upon his own recognizance. The court refused to discharge the prisoner on said application, and he then and there by his counsel excepted. It further appears that on the first day of May the court again continued the trial of said cause, and it is alleged by the petition that the prisoner is unable to obtain a trial or to procure bail.

Upon this state of facts, it is claimed that the prisoner is entitled to be released from custody, if not absolutely, at least upon his own recognizance; and his discharge is urged upon two grounds: first, that the discharge of the jury on the fourth of March, upon the mere statement of the foreman of the jury, that they were unable to agree upon a verdict, was an illegal exercise of power in the court, and the jury having been thus discharged without the consent, and against the objections of the defendant, is equivalent to a verdict of acquittal, and that he cannot legally be held to further answer this or any future indictment for said offense. Second. That the refusal of the court to impanel a jury and proceed with the trial on the twelfth of April, and the subsequent continuance of the trial of his case to the first of May, was a denial of his right to a speedy trial, and by virtue of the provisions of sections 582 and 583 of the criminal practice act, operated as a legal discharge from custody. (Comp. L., 1684 and 2207.)

The first ground relied upon for the release of the prisoner presents for our consideration two questions of importance in the practical administration of criminal law, and so far as we are advised, have not been passed upon by this court. The first question to be considered is, whether the prisoner was in legal jeopardy upon his second trial, and

the discharge of the jury, under the circumstances disclosed by the record, was equivalent to a verdict of acquittal. By the eighth section of the first article of the constitution of this state, it is declared that: "No person shall be subject to be twice put in jeopardy for the same offense." A similar provision is incorporated into the constitution of the United States, and in the constitutions of most of the respective states; but there is some diversity of opinion in the decisions as to what constitutes being "put in jeopardy." In some of the decisions, judges have expressed the opinion that this provision is but a constitutional recognition of an old and well-established maxim of the common law involved in the plea of former acquittal or conviction, and means no more than that "no person shall be twice tried for the same offense;" and that the jeopardy does not attach until a verdict is reached. (*United States* v. *Gilbert et al.*, 2 Sumner, 19; *People* v. *Goodwin*, 18 John. 188; *United States* v. *Haskell et al.*, 4 Wash. 402; *United States* v. *Penz*, 9 Wheat. 579.)

On the other hand, the courts of several of the states have gone to the opposite extreme, and held that a jury once sworn and charged with a criminal case involving "life and limb," cannot be discharged by the court before rendering a verdict, except by the consent of the prisoner, or the existence of some overruling necessity, and that the inability of the jury to agree upon a verdict does not create such necessity. (*Commonwealth* v. *Cook*, 6 Serg. & R. 577; *Commonwealth* v. *Clue*, 3 Rawle, 498; *McClury* v. *State*, 29 Pa. 383; *Williams* v. *Commonwealth*, 2 Gratt. 567; *Ex parte Spear*, 1 Dev. 491; *State* v. *Ephraim*, 2 Dev. & Bat. 162; *Mahala* v. *State*, 10 Yerg. 235; *Wright* v. *State*, 5 Ind. 290; *Ned* v. *State*, 7 Porter, 187.) Although there still exists some conflict and confusion in the opinion of judges upon this question, the rule now seems to be pretty well settled in the American courts that whenever the accused has been placed upon trial, upon a valid indictment, before a competent court, and a jury duly impaneled, sworn, and charged with the case, he has then reached the jeopardy, from the repetition of which this constitutional provision protects him, and, therefore, the discharge of the jury be-

fore verdict, unless with the consent of the defendant, or the intervention of some unavoidable accident, or some overruling necessity, operates as an acquittal, but the inability of the jury to agree upon a verdict, is recognized as creating such a necessity.

Bishop, in his treatise on criminal law, after an elaborate review of the authorities, and a discussion of the whole subject, says: "The better view of this whole question may be stated as follows; Whenever a trial has commenced, whether for misdemeanor or felony, the judge discovers any imperfection which will render a verdict against the defendant either void or voidable by him, he may stop the trial, and what has been done will be no impediment in the way of any future proceedings. Whenever, also, anything appears showing plainly the fact, that a verdict cannot be reached within the time assigned by law for the holding of the court, he may adjudge this fact to exist; and on making the adjudication matter of record, stop the trial, with like result as before. But, without the adjudication, the stopping of the trial operates to discharge the prisoner. In other words, when the record shows an actual jeopardy to have taken place against the defendant, he is protected thereby from further peril for the alleged offense. But where the record shows also matters disproving the peril, it does not show the peril, whatever else it shows, and therefore it does not protect him." (Bish. on Crim. Law, 873.)

Sections 396 and 397 of the criminal practice act of this state provide as follows: "Sec. 396. If after the retirement of the jury, one of them be taken so sick as to prevent the continuance of his duty, or any other accident or cause occurs to prevent their being kept for deliberation, the jury may be discharged.

"Sec. 397. Except as provided in the last section, the jury shall not be discharged after the cause is submitted to them until they have agreed upon their verdict, and rendered it in open court, unless by the consent of both parties, entered in the minutes, or unless at the expiration of such time as the court shall deem proper, it satisfactorily

appear that there is no reasonable probability that the jury can agree."

These provisions of the statute must be construed with reference to the constitutional restriction in respect to a second jeopardy, and when so construed, it is apparent they are in perfect accord with the doctrine above cited from Bishop. Both recognize the trial courts invested with power, in the exercise of a sound legal discretion, to discharge a jury after the cause has been submitted to them, without the consent of the defendant, and without the discharge constituting a legal bar to a future trial, in all cases of manifest necessity, whether such necessity arises from some physical cause occurring during the trial or the deliberation of the jury, or from the inability of the jury to agree upon a verdict.

This discretionary power thus recognized is, however, an absolute unrestricted discretion, depending upon the mere will of the judge, but is a sound legal discretion, to be exercised only upon sufficient grounds. "The power of the court to discharge a jury without the consent of the defendant," said Mr. Justice Sprague, in *Ex parte McLaughlin*, "is not an absolute uncontrolled discretionary power. It must be exercised in accordance with established legal rules, and a sound legal discretion in the application of such rules to the facts and circumstances of each particular case, and in this state is subject to review by an appellate court." (41 Cal. 211.) That it ought to be exercised in cases of mere disagreement, only after a long effort of the jury to agree, and when it satisfactorily appears to the court that there is no reasonable probability of their doing so, is well settled. And it seems to be equally well settled that the facts and circumstances, which induce the discharge, and an adjudication thereon, ought to be stated and appear in the record. (*State* v. *Ephraim*, 2 Dev. & Bat. L. 162; *Conway & Lynch*, v. *The Queen*, 1 Cox's Cr. Cas. 1; *People* v. *Cage*, 48 Cal. 323: *Poage* v. *State*, 3 Ohio St. 229; *State* v. *Prince*, 63 N. C. 529.)

The question, then, recurs, whether the facts and circumstances appearing upon the record of the second trial of

the defendant, were sufficient to authorize the court, in the exercise of a legal discretion, to discharge the jury without the defendant's consent. We are of opinion no sufficient ground appears. True, the record states that the jury "retired in charge of the sheriff duly sworn, and subsequently returned into court and by their foreman stated that they were unable to agree upon a verdict. Whereupon the court discharged the jury from further consideration of the case." Now for what reason were the jury thus discharged? The record is silent as to the length of time the jury were out, but it is clear that there was no necessity for their discharge in consequence of its having been so near the end of the term (as limited by the statute), as to preclude further deliberation on the part of the jury, because the ensuing term did not commence until the first Monday (3d) of April. Was it, then, because the court was satisfied that the jury had deliberated a sufficient and proper length of time, and that there was no reasonable probability of their being able to agree upon a further deliberation ? The record does not so state; nor does it appear that the court so adjudged. The only ground appearing, was, that the foreman of the jury stated, that "they were unable to agree upon a verdict." This was clearly insufficient, and was no ground for the exercise of that "delicate and highly important trust that only exists in cases of extreme and absolute necessity." The court may have been satisfied that the jury were unable to agree upon a verdict, and that there was no reasonable probability of their doing so upon further consultation and deliberation. But these were essential facts, the existence of which, ought to be determined by the court and established by the record. And as the record fails to establish the existence of such facts and such determination, it follows that the discharge of the jury was an illegal exercise of power on the part of the court.

We are, therefore, of opinion that the prisoner has been once put in jeopardy within the meaning of the constitutional provision under consideration, and that the discharge of the jury, under the circumstances disclosed by the record, was equivalent to a verdict of acquittal. But the fur-

ther question in this connection is, whether, upon the facts
here presented the prisoner is entitled to be discharged
from custody on *habeas corpus*.   There has been no verdict
or judgment of acquittal entered in the trial court, and hence
the indictment is still pending therein.   Nor does it appear
that the prisoner, at the time the jury were thus discharged
or at any subsequent time, applied to that court to be re-
leased from custody on the ground of his former jeopardy.
That he was at liberty to waive his rights under this consti-
tutional provision, and have his case submitted for trial be-
fore another jury, cannot be doubted.   Mr. Bishop, in his
commentaries on criminal law procedure, says: "Since a
defendant can, if he will, waive his rights under this con-
stitutional and common law provision, it follows, that, if he
would take advantage of a former jeopardy, he must, in some
way which accords with the rules of criminal law procedure,
bring the fact to the attention of the court."   (1 Crim. Pro.
806.)

He further says: "If there has been a legal jeopardy,
this is equivalent to a verdict of acquittal, and on motion,
without plea, the prisoner is entitled to his discharge.   *   *
But a writ of *habeas corpus* will not lie."   (Id. 821, and see
authorities cited.)   In support of the latter proposition,
however, he cites only the cases of *Wright* v. *The State* (5
Ind. 290), and *Ex parte Ruthven* (17 Mo. 541).   On referring
to those cases it will be observed that the decisions were
respectively based on statutes regulating proceedings on
the writ of *habeas corpus* entirely unlike the statute of this
state on the same subject.   The statutes of Indiana and
Missouri, respectively forbid the court or judge on *habeas
corpus* to inquire into the merits of an application, and dis-
charge the prisoner, in a case where he is confined under
an indictment, or under process issued thereon.   No such
restriction is to be found in the "act concerning the writ of
*habeas corpus*" of this state; on the contrary, by the provis-
ions of the fifteenth and sixteenth sections of said act, the
court or judge, on the return of the writ, is required to hear
the allegations and proofs and to look into all the facts of
the case, whether the prisoner be detained under an indict-

ment, or under process issued thereon, as well as when detained upon any other process "and to dispose of such party as the justice of the case may require." And by section 20 it is provided: "If it appears on the return of the writ of *habeas corpus* that the prisoner is in custody by virtue of process from any court of this territory (state), or judge, or officer thereof, such prisoner may be discharged. * * Where the imprisonment was at first lawful, yet by some act, omission, or event, which has taken place afterwards, the party has become entitled to his discharge." (Compiled Laws, 363, 364, 368.)

. · It will thus be seen that the powers of the court, or judge, charged with the duties of allowing this important writ, and of determining the rights of a party thereunder, are by these statutory provisions greatly extended beyond what existed at the common law, and beyond that conferred by the respective statutes of Indiana and Missouri upon which the decisions in the cases above referred to rest.

But notwithstanding the powers of the court and judge are, by these enactments, greatly enlarged, yet it is apparent they were not intended by the legislature to have the force and operation of an appeal, a writ of error, or a certiorari; nor were they designed as a substitute for either. And although it is the duty of the court, in the exercise of its proper jurisdiction under these provisions of the statute, to inquire into all the facts of the case, without regard to the nature of the process or authority under which the prisoner is detained, and, although the original commitment was lawful, to discharge him, if it appears that by reason of the happening of some subsequent "act, omission, or event," he has become entitled to his discharge, nevertheless the "act, omission, or event" which will justify the court in discharging the prisoner must be such as to render the process or, authority under which he is detained absolutely void, and not merely voidable. (Hurd on Hab. Corp. 332.)

It follows, therefore, that inasmuch as the defendant was at liberty to waive his constitutional right to be protected from a second jeopardy, and to have his case re-submitted for trial before another jury, the action of the court in dis-

charging the jury, although equivalent to a verdict of acquittal, did not render the process by virtue of which he is detained in custody void, but voidable only. It is, therefore, apparent that the discharge of the jury was not a final disposition of the case by the district court, and consequently the defendant must be regarded as in custody under the indictment, and still subject to the jurisdiction of that court; and hence the event which, within the meaning of the statute, would entitle the prisoner to his discharge on habeas corpus has not occurred. Upon the authorities before cited, that court evidently has power to discharge him on motion. At all events, in case he is again placed on his trial, he may, under the provisions of section 301 of the criminal practice act (Comp. L. 1925), take advantage of his previous jeopardy, by giving the facts attending his former trial, as disclosed by the record in the case, in evidence under his plea of "not guilty." (*People* v. *Gage*, 48 Cal. 323.)

The remaining ground upon which the prisoner's discharge is urged rests upon the orders of the court made on the 12th day of April and the 1st day of May, respectively, postponing the trial. As neither of said orders continued the trial of the cause for the term, it is clear that the principle involved is not distinguishable from that decided in the case of *Ex parte Larkin*, at the April term of this court, in which we held "that the regulation of the business of the term is a matter exclusively within the control of the judge, and cannot be interfered with by this court, certainly not in this proceeding."

It therefore follows that the prisoner must be remanded to the custody of the sheriff of Lincoln county, and it is so ordered.

BEATTY, J., concurring:

In regard to the first ground upon which the petitioner claims his release, that is, that the discharge of the jury without a verdict, at the January term of the district court, amounted under the circumstances to an acquittal, I concur in the conclusion reached by Justice Earll, that, even if it

did amount to an acquittal, it will not avail the petitioner on *habeas corpus*. The question whether he has been acquitted or not must be determined in another proceeding, and, consequently, the present occasion does not, in my judgment, call for any expression of opinion as to the effect of the discharge of that jury.

In regard to the second ground relied on by the petitioner, it is clear that no case had arisen, at the date of the filing of his petition, to which the provisions of secs. 582, 583 of the criminal practice act are applicable. He had been brought to trial at the first and second terms after he was indicted, but the juries had failed to agree. At the next term of the court his case had been continued from one day to a later day but not over the term; and when this petition was filed the term was but half expired. It is clear, therefore, that his application to this court was premature. He should have waited till the April term had expired without his being brought to trial, or, at least, until his case had been continued over the term, and then he should have moved the district court for his discharge, or for his release on his own recognizance. If his motion had then been denied without good cause, his imprisonment would have become unlawful, and the writ of *habeas corpus* would have been his proper remedy.

It should be understood that an imprisonment which is at first lawful, does not become unlawful until the right to be discharged has accrued, and that right has been denied, after a proper application to the court or officer whose duty it is to act in the premises. In cases of this sort, the statute expressly provides that the application to be discharged or bailed shall be made to the district court in which the indictment is pending, and it would seem that no express statutory provisions ought to have been required to demonstrate the propriety of such a course.

I concur in the order to remand.