### THE KING *vs.* KELIIHANAIWI DAVIS, W.

MOTION IN ARREST OF JUDGMENT HEARD BY FULL COURT BY CONSENT.

THE JURY IN A CRIMINAL CASE retired for deliberation at 4:40 P. M., and the Court adjourned at 11:30 P. M. to 9:30 A. M. the next day. Upon coming into Court conforming with the hour of adjournment, the foreman of the jury said they stood eight for acquittal and four for conviction, and the Court discharged the jury without the consent of the defendant;

HELD, that the discretion of the Court in discharging the jury after seventeen hours of deliberation was not subject to review;

*Also*, that such discharge of the jury did not operate as an acquittal of defendant;

*Also*, such a matter should properly have been raised by a plea in bar at the second trial.

Opinion of the Court by MCCULLY, J.

The matters on which the Court is called to pass its opinion arise from the following motion presented by Mr. Davidson, counsel for the defendant. Attorney General Preston and Mr. Davidson were heard in argument thereon Saturday, July 12th.

"The defendant in the above cause by J. M. Davidson, her attorney, moves the Court in arrest of judgment on the verdict rendered herein and assigns the following grounds:

"First—This cause coming on to be heard on the 6th day of June, A. D. 1879, at the Second Judicial Circuit holden at Wailuku, Island of Maui, before His Honor Chief Justice HARRIS and Mr. Justice FORNANDER, and a jury having been

duly impanneled and sworn to try the issue; after the cause had been submitted to said jury and they had retired and were deliberating, the Court adjourned at 11:30 P. M. June 6th to 9:30 A. M. June 7th, 1879.

"Second—Upon the said jury coming into Court conforming with the order of adjournment, the foreman stated the jury stood eight for acquittal and four for conviction; thereupon the Court, without consent of defendant, discharged the jury, which it is suggested was an acquittal of defendant.

"Third—On the trial of the above cause before another jury on the 7th and 8th days of July, A. D. 1879, at Honolulu, objection was made by counsel for defendant to the admission before the jury of a written confession or statement made under oath by defendant on a former occasion, which objection was overruled by the Court, and the statement or confession permitted to go to the jury, without which no conviction could have been claimed or obtained by the prosecution.

"Wherefore the said attorney believing that the said irregular proceedings, and especially the discharge of the jury on the former and first trial without the consent of the defendant, worked an acquittal of said defendant, the said attorney moves the Court for an order directing His Excellency the Attorney General to show cause why judgment in the above cause should not be arrested and the prisoner discharged."

Respecting the question of the admissibility of the defendant's confession as given in her testimony before the examining magistrate, the Court, at the hearing, said that they were of opinion, as suggested by the Attorney General, that this was matter for a bill of exceptions, which, if sustained, would give the defendant a new trial and would not acquit and discharge her. Her counsel had noted an exception at the trial, and accepting this view, intimated his intention to take that course.

The first point, that by an adjournment of the Court while the jury were consulting in their room the validity of the whole proceeding was destroyed, the defendant's counsel with-

drew from argument on the observation of some cases of English practice sanctioning an adjournment of Court pending a case, when necessary.

We have to premise as to the remaining item in the motion, the second, that it should regularly have been made as a plea in bar.

The defendant's position is that by the discharge of the jury at the trial in the Second Judicial Circuit Court, she was acquitted, and not liable to be tried again. Such plea should be made before another trial proceeds. But the Court *in favorem vitæ*, does not regard the technical objection and will now consider the point in like manner as if it had been made at the threshold of the late trial. We do not by this remark intend to impute any want of skill or care to defendant's counsel. He has argued his motion with force and conducted the defense with ability. He was at a disadvantage from his receiving the case at a late day, and from not being engaged in the first trial.

Article 7 of our Constitution, is: "No person shall be required to answer again for an offense of which he has been duly convicted, or of which he has been duly acquitted upon a good and sufficient indictment." The same appears in Article 9 of the Constitution of 1852.

The defendant's counsel argues that this is equivalent to the provision in the Constitution of the United States. "Nor shall any person be subject for the same offense, to be twice put in jeopardy of life or limb;" and that when the defendant was committed to the jury, her life was put in jeopardy, and that she was entitled of right to receive from that jury a verdict acquitting or convicting her, but that without the consent of herself or counsel the Court discharged the jury, that she may therefore claim that she may not again be put in jeopardy, that is, may be discharged from custody and prosecution. We shall refer later to the authorities adduced in support of this proposition.

It is to be observed that the language of our Constitution is full and explicit. To sustain such a plea in bar, there must have been a trial upon a good indictment proceeding to a verdict acquitting or convicting the defendant.

The case of a jury being discharged before rendering a verdict is contemplated by Section 1204 of the Civil Code: "When any jury shall return into Court and state that they cannot agree upon a verdict, the Court may, in its discretion, discharge such jury, or remand them to the jury room for further deliberation;" and by Section 3, Chapter 40 of the Statutes of 1876, which is a re-enactment of Section 1178 of the Code, containing the clause: "The successive disagreement of two juries impanneled to try the cause shall operate as an acquittal of the accused."

Under such a constitutional provision and statutes concerning the discharge of juries, it would seem to be beyond controversy in this Kingdom, that it lies in the discretion of the Court to discharge a jury for failure to make a verdict; that the discharge of one jury does not affect the right of the prosecution to put the defendant on a second trial, and that if a second jury are unable to form a verdict, and the Court shall see fit to discharge them, the defendant shall stand acquitted.

We say for failure to make a verdict, although the language of the statute, Section 1204, is: "Whenever any jury shall return into Court and state that they cannot agree upon a verdict." Section 1178, bases the acquittal on the fact of the disagreement of two juries. We must interpret the statute to mean that the judge may discharge a jury, when, in his judgment it appears that they cannot agree, after a sufficiently long time has been spent in deliberation. It cannot be a reasonable construction to hold that the Court must wait till the jury may formulate this fact in the terms employed in the statute.

It will appear by the statement below of what passed in this case, that the jury informed the Court that they had not

agreed.    This is equivalent to saying "they cannot," and the law does not require them to anticipate the future and say that they will not thereafter agree.

It would seem that the authors of the Constitution and Statutes intended by this phraseology to prevent the controversies which have arisen from the rule against the second jeopardy of life or limb—or as we should strictly say of life or liberty, there being no penalty of maiming in existing civilized law.    The force of the phrase quoted from the Constitution of the United States, and found in some State Constitutions, depends on the common law, of which it is a maxim established in the Magna Charta, and it has received luminous interpretation by the highest English authorities.    The case of Winsor *vs.* the Queen, in 1866, reported in Vol. 1 Queen's Bench Cases, pages 289 *et seq.*, reviews the line of precedents, and considers the origin of the legal tradition, that a jury once charged with the issue of a party's guilt or innocence, must be held together until a verdict is reached, or if discharged, it is with the result of acquittal.

Chief Justice Cockburn and Justices Blackburn, Mellor and Lush pronounce opinions.

The record of a conviction for felony (murder) showed that on the trial of the indictment, the jury being unable to agree, the Judge discharged them; that the prisoner was given in charge of another jury at the next assizes and a verdict of guilty returned, and judgment and sentence passed.    On writ of error, this learned Court held that the Judge had a discretion to discharge the jury which a Court of Error could not review; that the discharge of the first jury without a verdict was not equivalent to an acquittal, and that a second jury process might issue.

We may state the facts and circumstances of the case at bar, but in so doing we do not propose to review the act of the Circuit Court discharging the jury.    Our statute as cited, Section 1204, places this in the discretion of the Court holding

28

the trial, and established legal principles will not permit the discretion of a Court to be reviewed.

The jury retired after the charge of the Court at 4:40 P. M. to consider of their verdict, and at 11:35 A. M. returned into Court presenting a "verdict" of acquittal, five jurors dissenting. The Circuit Judge then sitting, the presiding Justice not being present, said that this was not a verdict, and directed them to retire again to consider. At 9:30 A. M. of the next day the jury are called in and by their foreman say that they stand *eight to four*, upon which the Court discharged the jury. It would appear by this that the jury had deliberated for seventeen hours without obtaining the unanimity of the nine, who must agree to a verdict. The language of Chief Justice Cockburn in Winson's case may here be cited as expressing our view. He says: "We find in the case of Rex *vs.* Cobbett, that most excellent and learned Judge, Lord Tenterden, discharged a jury of his own act and in the exercise of his discretion after they had been in deliberation fifteen hours; and other instances have been cited where Judges have acted in a similar manner. It appears to me that if the true principle on which justice ought to be administered is regarded, it is essential in trial by jury not to abridge the Judge's discretion, but to leave it unfettered." After speaking of the harsh measures formerly used to coerce juries to an agreement, he says: "We do not desire that the unanimity of a jury should be the result of anything but unanimity of conviction. When therefore a reasonable time has elapsed and the Judge is perfectly convinced that the unanimity of the jury can only be obtained through the sacrifice of honest, conscientious convictions, why is he to subject them to torture, to all the misery of men shut up without food, drink or fire, so that the minority, or possibly the majority, may give way and purchase ease to themselves by a sacrifice of their consciences? I am of opinion that so far from the practice of thus discharging a jury being a mischievous one, it is one essential to the up-

The King *v*. Keliihanaiwi Davis, w.

holding of the pure, conscientious and honest discharge of the duties of a juryman."

The same Judge in this case thus interprets the maxim that no man is to be put in peril twice on the same charge: "We must apply that great fundamental maxim of the criminal law according to its true meaning. It means this, that a man shall not twice be put in peril after a verdict has been returned by the jury; that verdict being given on a good indictment, and one on which the prisoner could be legally sentenced. It does not, however, follow that if from any particular circumstances a trial has proved abortive, that then the case shall not be again submitted to the consideration of a jury and determined as right and justice may require."

Now to speak of the authorities adduced by the defendant. People *vs.* Goodwin, 18 Johnson, 187, cited from 9th American Decisions, of date 1820, holds the doctrine we have expressed, that the power of discharging a jury exists in case of necessity. Chief Justice Spencer adopts the observation of Justice Kent in People *vs.* Olcott that " every question of this kind must rest with the Court under all the particular or peculiar circumstances of the case. There is no alternative, either; the Court must determine when it is requisite to discharge, or the rule must be inflexible that after the jury are once sworn no other jury can in any Court be sworn and charged in the same case. The moment cases of necessity are admitted to form exceptions, that moment a door is opened to the discretion of the Court to judge of that necessity and to determine what combination of circumstances will create one."

It was pressed in argument that the jury having, although improperly, announced at 11 P. M. that they stood seven for acquittal and five for conviction, and at 9:30 the next morning that they stood eight to four, showed that they were progressing towards a verdict acquitting the prisoner, and that if they had been sent back to their room again it is likely that one juror of the four might have gone over to the majority, giving

the nine needed to make a verdict. It might so have resulted. But it is not the duty of the Court to force a verdict, either of guilty or not guilty, which would not be the deliberate, voluntary and reasonable judgment of every one of the jurors rendering it, and this principle would be violated by the moral coercion of a single juror. It was for the Judge who knew the "particular or peculiar circumstances" of that case, then, to exercise the discretion vested in him by our statutes, and in accord with the principles of the common law.

In O'Brian *vs.* Commonwealth (Kentucky), cited from 15 Am. Rep., a juror was discharged after the trial had commenced, on his statement that he had been one of the grand jury, and another juror being drawn the trial proceeded. The decision of the Court appears to be based on some particular statutes of that State. In so far as the Court held that the discretion of the Judge could be reviewed, or that the provision of the State Constitution that no person shall be twice put in jeopardy, applied to a trial by a jury not properly constituted, we must hold that the weight of better authority is adverse.

Likewise in People *vs.* Cage, 48 Cal., 323. Here a jury had considered of their verdict for four days. The time for the adjournment of the Court having come, the Court directed the sheriff to inquire if they had reached a verdict. They replied they had not, and could not agree, whereupon, without calling the jury to the bar, the Court closed the term and let the jury go.

It is sufficient reply to this authority that our constitutional provision is that a good conviction or a good acquittal is the bar to another trial, and our statute by providing that the successive disagreement of two juries shall operate to acquit a prisoner, very plainly carries that the disagreement of one jury does not have that effect.

The case on which defendant's counsel chiefly depends is that of Com. *vs.* Cook, 6 Sergeant and Rawle, Chief Justice

Tilghman giving the opinion.    In this case three prisoners indicted jointly for murder were tried together.    The jury returned into Court and announced that they had agreed on a verdict as to two, but would not be able to agree as to the third defendant, whereupon the Court discharged them.  Chief Justice Tilghman held that the jury should have been allowed to render their verdicts separately for the defendants so far as they had agreed.    He must presume that the verdicts were of acquittal, and being forbidden to make inquiry as. to which they applied, must discharge all the prisoners.  Thus the judgment of the Court rested sufficiently on this circumstance, which does not apply to the case at bar.  The Court then goes on further to examine the power of a Judge to discharge a jury when they fail to agree.    We have said that our statute and Constitution have given an authority which is not to be set aside by precedents.

For these reasons we are compelled to deny the motion.

Attorney General Preston for the Crown.

J. M. Davidson for defendant.

Honolulu, July 19, 1879.