JOHN ROBERT SHANNON aka KURT KENYA, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 18316

December 6, 1989 783 P.2d 942

*Peter L. Flangas,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, *Michael N. O'Callaghan,* Deputy District Attorney, Clark County, for Respondent.

# OPINION

By the Court, STRINGFIELD, D. J.[1]:

This is an appeal from judgments of conviction in cases C74463 and C76901 which were consolidated for trial. Appellant (henceforth referred to simply as Shannon) was convicted of seven counts of lewdness with a minor (felonies), two counts of sexual assault (felonies), and two counts of solicitation of a minor to engage in an infamous crime against nature (felonies).

## FACTS

This appeal involves sexual acts perpetrated by Shannon upon two boys (both age thirteen) while on canoe outings with Shannon. The boys will be identified as Minor A and Minor L. Shannon was convicted in case C74463, involving Minor A, of six counts of lewdness with a minor, two counts of sexual assault and two counts of solicitation of a minor to engage in an infamous crime against nature. Shannon was convicted in case C76901, involving Minor L, of one count of lewdness with a minor.

The record reflects that Shannon developed an intricate scheme to provide himself with access to young boys for the purpose of eventually molesting them. This scheme involved the formation of a canoe club comprised of young boys, many of whom came from disintegrated families or had other physical, psychological

---

[1] The Honorable Bob Miller, Governor, designated The Honorable Thomas L. Stringfield, District Judge of the Fourth Judicial District, to sit in this case in the place of THE HONORABLE JOHN MOWBRAY, Justice, who voluntarily disqualified himself. Nev. Const., art. 6, § 4.

or emotional vulnerabilities. Shannon targeted these vulnerabilities and, in turn, created a pseudo-parent dependency. Once this was accomplished, Shannon utilized sexual humor and his role of "teacher" as a tool to molest sexually the boys.

## ISSUES

Shannon raises the following issues on appeal.

*Amendment of the Information*

After the trial had commenced, the state moved to amend the information in Counts VIII and IX, in case C74463, which charged Shannon with sexual assault. Over Shannon's objections, the court allowed the amendment. The effect of the amendment was to transpose the factual sequence in which the act of sexual assault was perpetrated.[2]

Shannon contends that the amended information had the effect of charging a different offense. This, Shannon claims, wrongfully denied him a preliminary examination on the new charge, an arraignment and the right to plead. *See* NRS 171.196(2); NRS 174.015; Snyder v. State, 103 Nev. 275, 738 P.2d 1303 (1987).

The trial court may permit an indictment or information to be amended at any time before a verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced. *See* NRS 173.095(1).

The amended information in this case conforms with this criteria. First, no additional offense was charged in this case. The original information charged Shannon with sexual assault which may be accomplished by a person who subjects another person to sexual penetration, or who forces another person to make a sexual penetration on himself. *See* NRS 200.366(1). The original information alleged that the act of sexual penetration was accomplished by fellatio. After the amendment, Shannon's charged offense remained sexual assault accomplished by fellatio. The substantial rights of the defendant were not prejudiced by the amendment of this information.

*Joinder of the Cases*

Shannon next argues that it was prejudicial to join case

---

[2]The original complaint alleged that Shannon committed sexual assault by inserting his penis into the mouth of the said Minor A. The amended information transposed the sequence by stating that Minor A's penis was inserted into the mouth of defendant.

C76901, in which Shannon was charged with two counts of lewdness with a minor upon child L, with case C74463 in which Shannon was charged with eleven counts of sexual crimes involving Minor A. Shannon asserts that the two cases are not proper for joinder because they fail to meet the criteria set forth in NRS 173.115 which states that:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are:
>
> 1. Based on the same act or transactions; or
>
> 2. Based on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Shannon asserts that the incidents with Minor A and Minor L are distinct in nature and time. Shannon also claims that the act between him and Minor L was an act of "horseplay" but when joined with Minor A's eleven counts of sexual crimes created sufficient prejudice to obtain a conviction in Minor L's case.

These acts, although different in time and place, are part of a common scheme or plan devised by Shannon. This is evident by the identical modus operandi utilized with each child. Both boys were members of Shannon's Canoe Club. Both boys were victims of sexual crimes perpetrated by Shannon while on canoe outings. Both boys were of the same age group. Given the closeness of the acts, the similar circumstances, and the same modus operandi, the criterion of a common scheme or plan was sufficiently satisfied.

Joinder is within the discretion of the trial court and will not be reversed absent an abuse of that discretion. *See* Lovell v. State, 92 Nev. 128, 546 P.2d 1301 (1976). The joinder of these two cases was properly within the trial court's discretion.

## *Jury Instructions*

Shannon next contends that it was reversible error for the court to give jury instruction 13 while refusing Shannon's requested instruction "M" in case C74463.[3]

---

[3]Instruction 13 recited the language of NRS 171.020. Proposed instruction "M" stated:

> The term act in this instruction means either (1) an element of the crime charged, or (2) an attempt to commit the crime charged, or (3) a criminal act constituting, at the least, a crime itself, committed in this State in "partial execution" of the crime charged and is substantial and integral part [sic] of an overall continuing crime plan.

The instruction given in this case accurately and amply covered the law. The trial court does not commit reversible error in refusing to instruct the jury on defendant's theory of the case where the offered instructions are substantially covered by the instructions given to the jury. The effect of giving instruction "M" would have been cumulative and was properly refused. *See* Ford v. State, 99 Nev. 209, 660 P.2d 992 (1983); Roland v. State, 96 Nev. 300, 608 P.2d 500 (1980); Passarelli v. State, 93 Nev. 292, 564 P.2d 608 (1977).

*Expert Testimony*

Shannon's next claim of error is that expert testimony on pedophilia was impermissibly allowed because it was introduced to show evidence of Shannon's character or a trait of his character to prove that he acted in conformity therewith. *See* NRS 48.045. Shannon asserts that this testimony resulted in a "trial by a psychologist."

In essence, the expert witness testified that in her opinion Minor A showed symptoms of one who was sexually abused. In response to a hypothetical, she also responded that the befriending of young men, isolation, sexual humor, and creating teaching situations as a means of touching young men were all consistent with pedophilia. The expert also clearly stated that she was only testifying as to characteristics of a victim and to characteristics of somebody with a pedophilic disorder. When asked if she thought that Shannon committed the offenses, she stated that she had never met Shannon and could make no assumptions as to who abused the child.

Contrary to Shannon's assertions, we find that this was acceptable expert testimony. Shannon mischaracterizes the testimony set forth at the trial. Pursuant to NRS 50.345, if relevant, expert testimony is allowable to show that the victim's behavior or mental condition is consistent with the behavior or condition of a victim of sexual assault. It is equally proper for the state's expert to express an opinion about whether or not a child has been sexually abused. As we stated in Townsend v. State, 103 Nev. 113, 734 P.2d 705 (1987): "[s]uch an opinion, although embracing an ultimate issue, represents both the peculiar expertise and consummate purpose of an expert's analysis."

Expert testimony is proper only when it is more relevant than prejudicial and helps educate lay jurors on specific areas of expertise. The objective is to aid jurors in their fact finding process. One clear limitation on such testimony is the conclusion of facts that are within the jury's province. The expert testimony

in this case stayed within the boundaries of relevant, informative and permissible testimony. There was no error in allowing such testimony.

## Judge's Comment

An additional claim of error made by Shannon is that comments made by the trial judge in the jury's presence denied him a fair trial in case C74463, involving Minor A.

The comments at issue were made during the course of formulating a hypothetical question for the expert witness. The trial judge's statement was as follows:

> It says, — Well, we don't know three to four, we know it was during the course of the night. We know he was masturbated a minimum of three times and ejaculated and he could not recall if he did it the second time and fell asleep.

Shannon contends that the Judge's comments prefaced with the words "we know" unequivocally informed the jury that the facts of masturbation and fellatio had been proven.

After a careful review of the comments in their full context, it appears that they were made in a conversation between the court and defense counsel in order to settle properly a hypothetical posed to the expert witness, not as a comment on the facts. In fact, defense counsel made his objection to the hypothetical because it was not based on the facts of the case. Counsel also offered additional facts that had been left out of the hypothetical.

Stating the evidence is permissible pursuant to NRS 3.230. In contrast, charging the jury as to facts is specifically prohibited by article 6, section 12 of the Nevada Constitution and its statutory counterpart NRS 3.230. This court cautions trial judges against making comments concerning the facts of any case at trial. Additionally, when a judge's comments may be susceptible of charging juries on the facts, a curative instruction is required. Such actions are necessary in order to prevent the invasion of the jury's province. However, the facts in this case do not constitute a violation.

## Prosecutorial Misconduct

Shannon next asserts that the prosecutor's closing argument amounted to misconduct mandating reversal. During his closing, the prosecutor made the following comments:

> Mr. Flangas has been insulting to me, personally, on the

way this case has gone. *You should be insulted* at the fact that the Defendant has been putting on a *show for you* during this entire trial. You can tell by the way he's testified up there because you've witnessed when I was putting on our case the defendant sitting down at the desk where he's at now taking copious notes like he always does. When Mr. Flangas gets hung up, Mr. Flangas goes walking on back here and Mr. Shannon's there giving him the questions. Now, that's important because Mr. Flangas put those two victims, those two boys through such havoc. He manipulated them, he's · embarrassed them. He's made them cry, particularly [Minor A].

[objection made and overruled]

I was hoping I'd get the last word like I'm suppose [sic] to. Those kids were abused up on that stand. Mr. Flangas's questions were all directed from Mr. Shannon. You can tell that from watching in court what Mr. Shannon was doing the whole time. When there was a certain issue that was brought up, it was brought up by Mr. Shannon through his counsel. He got in another little knife and dug it in the boys' guts one more time and twisted it. You could see the boys' agony up there.

(Emphasis added.)

Essentially, Shannon argues that the statements were an improper appeal to sympathy resulting in prejudice and an unconstitutional attack on the right of an accused to appear and defend.

This court does not condone and has repeatedly admonished prosecutors against making such comments. *See* Aesoph v. State, 102 Nev. 316, 721 P.2d 379 (1986); Collier v. State, 101 Nev. 473, 705 P.2d 1126 (1985); McGuire v. State, 100 Nev. 153, 677 P.2d 1060 (1984). Any inclination to inject personal beliefs into arguments or to inflame the passions of the jury must be avoided. Such comments clearly exceed the boundaries of proper prosecutorial conduct.

Although such conduct is discouraged, a review of the record does not show any indication that Shannon was prejudiced thereby. Therefore, the error is harmless beyond a reasonable doubt. Pasgrove v. State, 98 Nev. 434, 651 P.2d 100 (1982); Sanders v. State, 96 Nev. 341, 609 P.2d 324 (1980).

*Sufficiency of the Evidence*

Shannon's next claim of error is that there was insufficient

evidence adduced at trial to support a conviction on the sexual assault charges (case C74463, Counts VII and XI).[4]

These charges stem from a February 1986 canoe trip that Minor A took with Shannon. On the second night of the trip, while the child feigned sleep, Shannon unzipped the child's sleeping bag and twice orally copulated him by the act of fellatio. This same incident resulted in the sexual solicitation conviction which will be discussed below.

It is Shannon's contention that because the child feigned sleep, thereby not resisting, that the act was not against the child's will. Also, because the child testified at trial that the child knew what Shannon did was wrong, the child did not lack understanding. Thus, Shannon contends, a reasonable jury could not have reached a guilty verdict on sexual assault had they followed the jury instructions.

Shannon interprets "against one's will" to mean physical force, threats of death or great bodily harm—exclusively. We are not willing to interpret "against one's will" so narrowly. There are other actions equally capable of impinging on one's free will.

In this factual scenario, the relationship between Shannon and the child must be taken into account. Shannon, through his perfidious conduct, created a false sense of trust with the child and his parents. Shannon assumed a role of pseudo-parent and confidant which encouraged the child to become dependent in a falsely created atmosphere. Shannon manipulated his influence and imposed his sexual will on the child.

Other factors must also be taken into consideration, such as the child's age and his maturity level. In fact, the child's reaction of feigning sleep is a clear attempt to avoid the situation and is indicative of a child's expression of unwillingness. In light of all of the circumstances, the element of "against the victim's will" is satisfied in this case. A contrary finding would give an unscrupulous individual carte blanche for cleverly executing a well thought out plan upon innocent children.

These circumstances support a finding of sexual assault because Shannon knew or should have known the child was mentally or physically incapable of resisting or understanding the nature of the conduct. *See* NRS 200.366. In fact, Shannon's elaborate scheme was designed to achieve this very end.

---

[4]NRS 200.366 provides in pertinent part:

> A person who subjects another person to sexual penetration, or who forces another person to make a sexual penetration on himself or another, or on a beast, against the victim's will or under conditions in which the perpetrator knows or should know that the victim is mentally or physically incapable of resisting or understanding the nature of his conduct, is guilty of sexual assault.

Where, as here, the verdict is supported by substantial evidence in the record it will not be disturbed on appeal. McKinney v. State, 95 Nev. 494, 596 P.2d 503 (1979); Sanders v. State, 90 Nev. 433, 529 P.2d 206 (1974).

## Jurisdiction over Arizona Crimes

Shannon was convicted in case C74463 of Counts II, III, and IV (three counts of lewdness with a minor) based upon three acts that took place on a January 1986 trip with Minor A. Shannon and the prosecution stipulated that these crimes took place on the Arizona side of Lake Mead. Such a stipulation by the parties must be accepted as a conclusive fact. *See* Gottwals v. Rencher, 60 Nev. 35, 92 P.2d 1000 (1939). The lower court ruled that Nevada retained jurisdiction pursuant to NRS 171.020 which states that:

> Whenever a person, with the intent to commit a crime, does any act within this state in execution or part execution of such intent, which culminates in the commission of a crime, either within or without this state, such person is punishable for such crime in this state in the same manner as if the same had been committed entirely within this state.

Shannon challenges the finding of jurisdiction over these crimes in light of our past judicial interpretation of this statute.

We have limited the scope of NRS 171.020 in the cases of Vincze v. Sheriff, 86 Nev. 474, 477, 470 P.2d 427, 429 (1970) and Smith v. State, 101 Nev. 167, 697 P.2d 113 (1985) based on the possible imposition upon the sovereignty of a sister state, (*see* People v. Buffum, 256 P.2d 317, 320 (Cal. 1953).

We further hold that whether NRS 171.020 allows Nevada jurisdiction over crimes occurring in another state is a question of jurisdiction, not an element of the crime charged. As such, it is a question of law to be decided by the court, not to be submitted to a jury.

*Vincze* and *Smith* are the only two cases in which we have construed the boundaries of state criminal jurisdiction under NRS 171.020. However, since these cases were decided, the United States Supreme Court has ruled, under the dual sovereignty doctrine, that successive prosecutions by two states for the same conduct are not barred by the double jeopardy clause of the Fifth Amendment. *See* Heath v. Alabama, 474 U.S. 82 (1985). As a result, the prosecution of cases such as Shannon does not bar similar prosecutions by the State of Arizona. Therefore, we are now of the opinion that NRS 171.020 should be given the full interpretation intended by the Nevada Legislature.

The language of the statute gives jurisdiction to Nevada courts whenever the criminal intent is formed and *any act* is accomplished in this state in pursuance or partial pursuance *of the intent.* The statute does not require that there be partial execution of the actual crime; it only requires some carrying out of the criminal intent. In this case the facts clearly show that Shannon developed an elaborate scheme to separate vulnerable children from their parents for the purpose of subjecting them to his perverted sexual desires. This scheme involved the forming of a canoe club aimed at potential victims. All of these acts occurred in the State of Nevada and were clearly committed in pursuance of Shannon's intent to commit the crimes for which he was convicted of at trial. Therefore, the jurisdictional requirements of NRS 171.020 were met and the trial court correctly ruled that Nevada retained jurisdiction over the crimes which were consummated in the State of Arizona.

### *Conflict Between Sexual Assault and Solicitation*

Shannon's last contention is that his conviction of soliciting a minor to engage in an infamous crime against nature (Counts X and XI) and of sexual assault (Counts VIII and IX) are mutually exclusive under the facts of this case. Shannon argues that a finding of guilty on one charge implies a finding of not guilty on the other. Both convictions stem from the act of fellatio committed against Minor A on the February 1986 canoe trip previously discussed above.

The state argues that Shannon incited the child to engage in fellatio by his preliminary non-verbal conduct which aroused the child and resulted in the solicitation charge. The state describes this preliminary non-verbal incitement as defendant's fondling of the child's genitals and eventual performance of fellatio on the child. The state further argues that after this initial non-verbal conduct, Shannon's oral copulation of the child accomplished the act of sexual assault.

On the other hand, Shannon contends that because the child testified that he knew the act of fellation was wrong, the sexual assault charge based on lack of knowledge is erroneous. Therefore, to show sexual assault, the jury must have found that the act was against the child's will. The argument continues that if it was against the child's will he could not have been solicited.

Shannon's argument has merit. Sexual assault and solicitation of a minor to engage in an infamous act against nature, under the facts of this case, cannot coexist.

Our decision is a narrow one, however, based only on the facts before us.

It is conceivable for a person to be solicited and initially consent to engage in an act but before the act is executed to withdraw consent. If the act is completed after the withdrawal of consent, it would be against the will of the person. That is not the situation presented for our review. The evidence is insufficient to establish that Shannon's preliminary non-verbal conduct incited, enticed or solicited the child to engage in any act. The child's only acknowledgment of Shannon's presence was to feign sleep. As previously stated this sufficiently established an unwillingness on the child's part. Because the facts underlying the sexual assault charges are indistinguishable from the solicitation charge, the felony convictions of the solicitation must be vacated.

## CONCLUSION

Therefore, we affirm all judgments of conviction except Counts X and XI (solicitation of a minor to engage in an infamous crime against nature) of case C74463. The two felony solicitation convictions are hereby vacated.

YOUNG, C. J., STEFFEN, SPRINGER and ROSE, JJ., concur.