137 Nev., Advance Opinion 61

IN THE SUPREME COURT OF THE STATE OF NEVADA

WILBER ERNESTO MARTINEZ
GUZMAN,
Petitioner,
vs.
THE SECOND JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
WASHOE; AND THE HONORABLE
CONNIE J. STEINHEIMER, DISTRICT
JUDGE,
Respondents,
    and
THE STATE OF NEVADA,
Real Party in Interest.

No. 81842

FILED

SEP 3 0 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus challenging a district court order denying a motion to dismiss counts of an indictment.

*Petition granted.*

John L. Arrascada, Public Defender, and John Reese Petty, Katheryn Hickman, Gianna M. Verness, and Joseph W. Goodnight, Chief Deputy Public Defenders, Washoe County,
for Petitioner.

Aaron D. Ford, Attorney General, Carson City; Christopher J. Hicks, District Attorney, and Marilee Cate, Appellate Deputy District Attorney, Washoe County; Mark Jackson, District Attorney, Douglas County,
for Real Party in Interest.

BEFORE THE SUPREME COURT, EN BANC.

SUPREME COURT
OF
NEVADA

(O) 1947A

21- 28071

*OPINION*

By the Court, STIGLICH, J.:

This is the second time this court has considered the scope of a grand jury's authority to return an indictment for offenses committed by petitioner Wilber Ernesto Martinez Guzman. Last year, we held that a grand jury may inquire into an offense as long as venue is proper for that offense in the district court where the grand jury is impaneled. *Martinez Guzman v. Second Judicial Dist. Court*, 136 Nev. 103, 110, 460 P.3d 443, 450 (2020). Today, we consider whether venue is proper.

Martinez Guzman has been charged with committing three burglaries and two murders in Washoe County, and two burglaries and two murders in Douglas County. A Washoe County grand jury indicted him for all these offenses. Upon Martinez Guzman's motion to dismiss the Douglas County charges for lack of territorial jurisdiction, the district court found that venue was proper in Washoe County for each charge. We disagree. The State advanced several theories for why venue was proper in Washoe County, and venue for the Douglas County charges need only be proper under one justification for the Washoe County grand jury to have authority to indict Martinez Guzman. But the State's theories supporting venue were too speculative and unsupported by the evidence to make venue proper for any of the Douglas County charges. In particular, we conclude there was no act or effect requisite to the consummation of the Douglas County offenses that occurred in Washoe County to justify venue there under NRS 171.030. We also determine there was insufficient evidence that property taken from Douglas County had been brought into Washoe County to justify venue there under NRS 171.060. We therefore hold that the district court

(O) 1947A

manifestly abused its discretion in denying Martinez Guzman's motion to dismiss the Douglas County charges for lack of venue.

## BACKGROUND

*Crimes and indictment*

Martinez Guzman, a Carson City resident, is accused of committing five burglaries and four murders in three households between January 3 and January 16, 2019. First, according to the State, Martinez Guzman burglarized the David home in Reno (Washoe County) on two consecutive nights. There, among numerous other items, he stole the gun and ammunition that he went on to use in the subsequent crimes. Around five days later, the night of January 9, he burglarized the Koontz home and killed Constance Koontz in Gardnerville (Douglas County). That same week, he burglarized the Renken home in Gardnerville, killing Sophia Renken. He then returned to the David home the night of January 15, burglarizing it and killing Gerald and Sharon David. In a police interview following his arrest on January 19, Martinez Guzman confessed to the crimes, told police he had observed the homes while working for a landscaping business, and directed police to a location in Carson City where he had buried other weapons taken from the David home. Martinez Guzman stated he drove the same car to each of the homes. When officers searched his car after his arrest in Carson City, they discovered a .22 caliber revolver and ammunition, a small pendant and an airline document from the Koontz home, and a name tag from the David home.

In March 2019, a grand jury returned an indictment with ten felony counts in the Second Judicial District Court in Washoe County. The evidence consisted mostly of Martinez Guzman's police interview. Counts I, II, and IX charge the burglaries of the David home in Washoe County,

 

and counts VII and VIII charge the murders of the Davids. Counts III, IV, V, and VI (collectively, the Douglas County charges) charge the burglaries and murders at the Koontz and Renken homes in Douglas County. Count X charges possession of the stolen firearms in Washoe County and/or Douglas County and/or Carson City. The State subsequently filed a notice of intent to seek the death penalty.

*Past matter before this court*

Martinez Guzman moved to dismiss the Douglas County charges on the ground that the Washoe County grand jury lacked jurisdiction under NRS 172.105, which allows grand juries to "inquire into all public offenses triable in the district court or in a Justice Court, committed within the territorial jurisdiction of the district court for which it is impaneled." The district court denied the motion to dismiss after concluding that the court's territorial jurisdiction extended statewide. *Martinez Guzman*, 136 Nev. at 105, 460 P.3d at 446.

This court reviewed that issue on a writ petition and held that the district court had interpreted NRS 172.105 too expansively, because a grand jury may indict a defendant only "so long as the district court that empaneled the grand jury may appropriately adjudicate the defendant's guilt for that particular offense" under the applicable venue statutes. *Id.* at 110, 460 P.3d at 450. We vacated the district court's order and remanded the matter for reconsideration of the motion to dismiss, providing that

> In doing so, the district court shall review the evidence presented to the Washoe County grand jury to determine whether there is a sufficient connection between the Douglas County offenses and Washoe County. *To do so, the district court must determine whether venue would be proper in Washoe County for the Douglas County offenses.*

*Id.* at 104, 460 P.3d at 445 (emphasis added). If venue was improper, we explained, "then the Washoe County grand jury does not have the authority to inquire into the Douglas County offenses, and the district court must grant Martinez Guzman's motion to dismiss." *Id.* at 104, 460 P.3d at 446.

*Proceedings on remand*

The district court reheard the motion to dismiss after supplemental briefing. Martinez Guzman argued that only two venue statutes—NRS 171.030 and NRS 171.060—were applicable, and they did not support venue in Washoe County for the Douglas County charges. The State countered that venue was appropriate in Washoe County under the applicable venue statutes and that the district court could also consider other statutes like NRS 173.115 (concerning joinder of offenses) and NRS 171.020 (concerning Nevada's jurisdiction over offenses committed outside the state). The district court again denied the motion to dismiss, finding that venue was proper in Washoe County for all charges and, thus, the grand jury had authority to indict Martinez Guzman on the Douglas County charges.

Martinez Guzman again petitioned this court for a writ of mandamus on the ground that the district court manifestly abused its discretion in finding venue proper in Washoe County.

## DISCUSSION

*We choose to entertain this writ petition*

Whether a writ of mandamus will be considered is within this court's sole discretion. *Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991). A writ of mandamus is available to "compel the performance of an act that the law requires" or "to control a manifest abuse or arbitrary or capricious exercise of discretion." *State v. Eighth*

*Judicial Dist. Court (Armstrong)*, 127 Nev. 927, 931, 267 P.3d 777, 779 (2011). Mandamus may be appropriate "when an important issue of law needs clarification and sound judicial economy and administration favor the granting of the petition." *State v. Second Judicial Dist. Court (Ducharm)*, 118 Nev. 609, 614, 55 P.3d 420, 423 (2002). However, the writ will not be issued if the petitioner has a plain, speedy, and adequate remedy at law. NRS 34.170.

Here, the petition touches on an important and largely unsettled legal question in Nevada: what nexus between where a crime is committed and where it is charged must exist to make venue proper. If this matter were to proceed to a complex capital trial on all of these charges, only for this court to find on appeal that the Washoe County grand jury lacked authority to indict on the Douglas County charges, much time and judicial resources would be wasted. Thus, the interests of sound judicial administration and clear law favor our consideration of this petition.

*Generally, venue is only proper in the county where the crime is committed*

In our first *Martinez Guzman* opinion, we tasked the district court to analyze venue "under the applicable statutes." *Martinez Guzman*, 136 Nev. at 110, 460 P.3d at 450. We take this opportunity to note that, in many instances, no specific venue statute applies and the general common law rule that "each county will have independent jurisdiction over a criminal offender for conduct occurring in that county" governs. *Zebe v. State*, 112 Nev. 1482, 1484-85, 929 P.2d 927, 929 (1996). This makes sense—when it is clear where a crime has been committed, community interest weighs towards prosecution in the county where that crime has been committed. However, there are statutory exceptions that allow some crimes to be prosecuted in more than one county. Whether the Washoe

County grand jury had authority to indict Martinez Guzman on the Douglas County charges—burglaries and murders that no one disputes happened in Douglas County homes—depends on whether venue to try those crimes in Washoe County is proper under any of those statutory exceptions.

*Venue was not proper in Washoe County under NRS 171.030 for the Douglas County offenses*

NRS 171.030 governs venue over criminal offenses committed in more than one county:

> When a public offense is committed in part in one county and in part in another or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties, the venue is in either county.

The State argues that Washoe County is a proper venue under NRS 171.030 on two grounds. First, it asserts that venue is proper because intent is an "act or effect" integral to committing the charged Douglas County offenses and Martinez Guzman's intent *could* have been formed in Washoe County. Second, the State contends that venue is proper because preparatory acts (namely, obtaining the gun in Washoe County) are acts "constituting or requisite to the consummation of" the Douglas County offenses. Martinez Guzman counters that there was no evidence that intent was formed in Washoe County or that he obtained the gun in preparation for the Douglas County offenses.

Questions of statutory interpretation are questions of law and are reviewed de novo, even in the context of a writ petition. *Mendoza-Lobos v. State*, 125 Nev. 634, 642, 218 P.3d 501, 506 (2009); *see also Cote H. v. Eighth Judicial Dist. Court*, 124 Nev. 36, 40, 175 P.3d 906, 908 (2008). "This court will attribute the plain meaning to a statute that is not ambiguous." *Mendoza-Lobos*, 125 Nev. at 642, 218 P.3d at 506. "A statute is ambiguous

when its language lends itself to two or more reasonable interpretations." *Id.* (internal quotation marks omitted). Because venue does not involve an element of the crime or relate to guilt or innocence, the State need only prove venue by a preponderance of the evidence. *Cf. McNamara v. State*, 132 Nev. 606, 615-16, 377 P.3d 106, 113 (2016). "[V]enue may be established by circumstantial evidence." *James v. State*, 105 Nev. 873, 875, 784 P.2d 965, 967 (1989).

*Neither formation of intent alone nor preparatory acts alone are sufficient to make venue proper in a charging county*

The district court's finding of proper venue under this statute depended in part on its finding that intent alone or a preparatory act alone could meet the requirements of that language. We hold that this conclusion was incorrect.

First, the nebulous formation of intent, without acts furthering that intent, does not constitute an "act" under NRS 171.030. The difference between a crime's *actus reus* and *mens rea* is centuries-old. We cannot say that the Legislature—in using the language "*acts* or effects"—meant to include the formation of *intent* alone, despite the fact that intent is certainly requisite to the consummation of many offenses. The State's argument assumes that, since intent is an element of the charges, *see* NRS 200.010; NRS 205.060, it is an act or effect constituting or requisite to the consummation of the burglaries and murders. But NRS 171.030 does not refer to elements of the offense, but rather to "acts or effects," and intent standing alone is neither.

Second, whether acts done in preparation for the relevant offense are "acts . . . requisite to the consummation" of an offense under NRS 171.030 is an issue of first impression for this court, which is not answered by the plain language of the statute. Below, both the district court

and the parties were guided by California courts' interpretations of that state's analogous statute, which is almost identical to NRS 171.030. *See City of Las Vegas Downtown Redev. Agency v. Crockett*, 117 Nev. 816, 824, 34 P.3d 553, 559 (2001); *compare* Cal. Penal Code § 781 (West 2020), *with* NRS 171.030.[1] Notably, California has said that the statute "must be given a liberal interpretation to permit trial in a county where only preparatory acts have occurred." *People v. Simon*, 25 P.3d 598, 617 (Cal. 2001). California has, for example, held that where a defendant was part of a conspiracy to commit a murder and traveled to one county to obtain a gun for subsequent use in committing that murder in another county, venue for the murder was proper in the county where he obtained the gun. *People v. Price*, 821 P.2d 610, 640 (Cal. 1991). In California, even a "telephone call for the purpose of planning a crime received within [a] county is an adequate basis for venue, despite the fact the call was originated outside the county," albeit at the outer limits of adequacy. *See People v. Posey*, 82 P.3d 755, 773 (Cal. 2004) (alteration in original) (internal quotation marks omitted). California not only allows venue to be based on preparatory acts, but also "on the *effects* of preparatory acts," such as the person in the charging county *receiving* the defendant's call from another county, as discussed in *Posey*. *People v. Thomas*, 274 P.3d 1170, 1176 (Cal. 2012).

Other states with similar statutes have roundly rejected an interpretation making purely preparatory actions sufficient for venue, however. Florida, for example, has ruled that "preparation is not one of the

---

[1]"Although [California Penal Code § 781] speaks in terms of jurisdiction, it is actually a venue statute." *People v. Britt*, 87 P.3d 812, 818 (Cal. 2004), *disapproved on other grounds by People v. Correa*, 278 P.3d 809 (Cal. 2012).

elemental acts 'constituting' or 'requisite to the commission' of premeditated first degree murder," even if certain acts of preparation may be necessary to complete a particular murder. *Crittendon v. State*, 338 So. 2d 1088, 1090 (Fla. Dist. Ct. App. 1976). Montana, under its previous statute, held that "[a]cts preparatory to the commission of an offense but which are not essentials of the crime, provided no basis for venue." *State v. Preite*, 564 P.2d 598, 601 (Mont. 1977), *overruled on other grounds by City of Helena v. Frankforter*, 423 P.3d 581 (Mont. 2018). The Montana court held that venue could not rest on acts like buying a pistol or traveling through a county to where the crime was committed, even though the crime could not be committed without these acts. *Id.*

We reject both extremes in our construction of NRS 171.030 with respect to preparatory acts. We hold that in Nevada, venue cannot be based on supposedly preparatory acts unless the evidence shows that those acts were undertaken with the intent to commit the charged crime and in furtherance of that crime. Many crimes involve countless acts which lead to the ultimate criminal act being possible. But it is obvious that not every action undertaken by a defendant which puts them in the particular place, time, and circumstances of an offense was done with the intent to commit that offense.

We therefore conclude that neither intent nor a supposedly preparatory act, standing alone, is sufficient to make venue proper in a charging county. However, when there is evidence of a preparatory act *plus* intent in that county, an act requisite to the consummation of the charged offense has occurred there, and a grand jury may indict a defendant of that offense.

*Insufficient evidence was presented to the grand jury that a preparatory act with the intent to commit the Douglas County charges occurred in Washoe County*

So, we turn to this matter's facts to determine if the Washoe County grand jury was presented with evidence of a preparatory act plus intent with respect to the Douglas County offenses.

The State argues, and the district court accepted, that Martinez Guzman had an original plan to rob outbuildings and garages on the three properties and then changed his intent after finding the Davids' firearm in Washoe County. The State argues there is a "very clear triggering event for the Douglas County offenses: [Martinez] Guzman's procurement of the revolver and ammunition from Washoe County," after which Martinez Guzman decided to "abandon his earlier plan and, instead, enter the living quarters of the victims in this case." The State acknowledges that Martinez Guzman could have formed the intent after obtaining the revolver, but argues that because intent could have been formed in Washoe County, Carson City, or Douglas County, venue is proper in Washoe County.

This argument relies on this court's decision in *Walker v. State*, 78 Nev. 463, 376 P.2d 137 (1962), one of our only opinions interpreting the "acts or effects" portion of NRS 171.030. In *Walker*, a hitchhiker murdered the driver who picked him up. The killing took place *somewhere* between Elko and Reno, but the State could not pinpoint the county where the murder occurred. *Id.* at 470, 376 P.2d at 140. This court concluded that venue was proper in Washoe County because "[w]ith the uncertainty existing in this case . . . 'the acts or effects thereof constituting or requisite to the consummation of the offense' could have occurred in two or more counties, one of which was Washoe County." *Id.* at 471, 376 P.2d at 141 (quoting NRS 171.030).

That concept from *Walker*—that venue is proper if an act constituting or requisite to the offense *could have* happened in the county claiming venue—was crucial to the district court finding venue proper under the State's change-in-intent theory. But the State's theory is too attenuated from the evidence presented to the grand jury. It was clear that Martinez Guzman had seen the David, Renken, and Koontz homes while working for a landscaping business in 2018 and identified those homes as potential targets for theft. From these bare statements and the fact that Martinez Guzman first went into the Davids' outbuildings, the State paints Martinez Guzman's supposed initial intent as to steal from these properties—but not from their living quarters. But the State places too much weight on the difference between burglarizing a garage or shed, and the rest of a home—a difference that Martinez Guzman never discussed. The evidence shows that Martinez Guzman formed the intent to steal from the Koontz and Renken properties before he ever knew he would acquire a firearm in Washoe County. This belies the State's venue theory, which completely hinges on the finding of the firearm. There is no evidence of any supposed "clear triggering event" that caused Martinez Guzman to commit the offenses in Douglas County.

Likewise, there is no evidence that Martinez Guzman took the firearm in preparation for the burglaries and murder in Douglas County. During his second consecutive burglary of the David property, Martinez Guzman took a bag from a trailer, which contained the revolver and several fishing poles. No evidence was presented that he even was aware the bag contained a firearm when he took it from the property. The fact that Martinez Guzman brought the revolver to the Koontz and Renken homes days later, and then back to the Davids', is insufficient evidence that his act

of taking the revolver was done in furtherance of his long-existing intent to burglarize the Douglas County homes, rather than just the consummation of the offense of burglarizing the Davids. We decline to interpret NRS 171.030 so that actions which *may* have been preparatory for another offense are sufficient to make venue lie in one county for a crime entirely committed within another. In this matter, had there been any nonspeculative evidence that Martinez Guzman obtained the revolver in Washoe County with the goal of committing burglary and murder in Douglas County, our holding may have been different.

*Venue was not proper in Washoe County for the Douglas County charges under NRS 171.060*

The State also argues that venue was proper under NRS 171.060, which governs offenses in which property is taken from one county and brought to another. NRS 171.060 reads, in part, as follows:

> When property taken in one county by burglary,
> robbery, larceny or embezzlement has been brought
> into another, the venue of the offense is in either
> county.

Thus, to make venue proper under this statute, the State must have shown the grand jury that property taken in Douglas County was at some point brought into Washoe County.

The arguments under this statute hinge on the fact that Martinez Guzman's vehicle was found upon his arrest in Carson City with two items from the Koontz home in it: an airline document and a small piece of jewelry. Of the four charges at issue—the Koontz murder, Koontz burglary, Renken murder, and Renken burglary—we find that the statute only arguably applies to the Koontz burglary and that venue in Washoe County was not proper for even that charge.



Martinez Guzman took property from the Koontz home in Douglas County days before returning to the David home in Washoe County and drove the same car to each of the crime scenes. Thus, the State alleges that the presence of the two items in Martinez Guzman's car in Carson City is circumstantial evidence that the items were in the car from the time of the Koontz burglary on January 9 or 10, through Martinez Guzman's return to Washoe County on January 15 or 16, and until his arrest on January 19, such that he brought stolen property into the venue county, establishing venue under NRS 171.060. The district court agreed and found that *all* the Douglas County charges could be brought in Washoe County under NRS 171.060. We conclude that the district court's determination constitutes a manifest abuse of discretion.

As a threshold matter, NRS 171.060 cannot establish Washoe County as the proper venue for the Koontz or Renken murders or the Renken burglary. NRS 171.060 provides that "burglary, robbery, larceny or embezzlement" may be charged in a county where property taken in the commission of one of those offenses is later brought. The statute does not expand venue for murder, which is not one of the enumerated crimes, even if the murder occurred at the time the property was taken. And there was absolutely no evidence presented to the grand jury to suggest that Martinez Guzman took property from the Renken home to Washoe County.

Nor does NRS 171.060 support the conclusion that Washoe County was a proper venue for the Koontz burglary, as the grand jury was not presented with evidence that the stolen items were in the vehicle when Martinez Guzman went to Washoe County. The only evidence the State points to in support of this argument is that Martinez Guzman drove the same car to the David home. We conclude that the mere possibility that the

SUPREME COURT
OF
NEVADA

(O) 1947A

14

property found in Martinez Guzman's car at the time of arrest was transported everywhere inside the car for days after it was stolen is insufficient to show proof by a preponderance of the evidence. Accordingly, the district court manifestly abused its discretion in concluding that venue was proper on this basis.

*The district court should not have hinged its decision on NRS 171.020 or NRS 173.115 for this intercounty venue issue*

Below, the district court relied on NRS 171.020 and Nevada's joinder statute, NRS 173.115(1), to support its conclusion that venue was proper in Washoe County for the Douglas County charges. NRS 171.020 provides that a person who commits an act in Nevada, which executes an intent to commit a crime and results in the commission of a crime, may be punished for that crime as though the crime were committed entirely in Nevada. NRS 173.115(1)[2] allows the joinder of multiple offenses against a defendant where the offenses are based on "the same act or transaction" or "two or more acts or transactions connected together or constituting parts of a common scheme or plan."

We conclude the district court erred in relying on these statutes. First, NRS 171.020 does not apply here because it deals with interstate jurisdiction, not intercounty venue. Second, NRS 173.115(1) is not a venue statute and finding that the offenses are part of a "common scheme or plan" does not confer venue. The statutes governing these particular intercounty offenses are NRS 171.030 and NRS 171.060, as discussed above. Therefore,

---

[2]This statute was amended by 2021 Nev. Stat., ch. 253, § 1. Any reference to NRS 173.115 throughout this opinion refers to the prior version, put in place by 2017 Nev. Stat., ch. 235, § 1.

 

the district court abused its discretion in resting its decision on NRS 171.020 and NRS 173.115.

## CONCLUSION

Despite many statutory exceptions which expand venue, the common law principle that a person should only be charged in a location with sufficient connections to the crime remains. *See Zebe*, 112 Nev. at 1484-85, 929 P.2d at 929.

Under the statutes governing venue for the offenses Martinez Guzman allegedly committed, it is not enough to present evidence that may have allowed the grand jury to speculate that intent could possibly have been formed in the charging county, or that an action in the charging county may have been preparatory for the disputed charges. NRS 171.030's reference to "acts or effects thereof constituting or requisite to the consummation of the offense" does not refer to intent or potentially preparatory acts standing alone. If, however, intent is coupled with an act in furtherance of that intent, venue may be proper. But there is simply no nonspeculative evidence of that in this matter. Likewise, there is no evidence besides bare speculation that stolen property was taken to the charging county as required by NRS 171.060.

This court has described venue as "a matter so pliant that it would expand under the slight pressure of convenience." *Walker*, 78 Nev. at 472, 376 P.2d at 141 (quoting *State v. Le Blanch*, 31 N.J.L. 82, 85 (1864)). In this case, we come up against the limits of venue's pliancy. We decline to hand-wave, solely for convenience's sake, around the principle that crimes should be tried where they are committed in the absence of a statutory exception. Consequently, we grant Martinez Guzman's petition and direct the clerk of this court to issue a writ of mandamus instructing

the district court to vacate its order denying Martinez Guzman's motion to dismiss and to enter an order granting the motion as to Counts III, IV, V, and VI.

_____, J.
Stiglich

We concur:

_____, C.J.
Hardesty

_____, J.
Cadish

_____, J.
Silver

_____, J.
Herndon

PICKERING, J., with whom PARRAGUIRRE, J., agrees, dissenting:

Countervailing policy interests are at play when determining criminal venue—on the one hand, the constitutionally founded interests of fairness and convenience to the accused, and on the other, the interests of the local justice system in demonstrating its ability to render justice, as well as the community's interests in witnessing prosecution of the wrong from which they suffered. *See United States v. Reed*, 773 F.2d 477, 480-82 (2d Cir. 1985) (discussing interests involved in determining constitutional venue in criminal prosecutions). Where "witnesses and relevant circumstances surrounding the contested issues" can be gathered with equal ease in competing venues, the interests of one venue may offset those of the other; therefore, "there is no single defined policy or mechanical test" to determine criminal venue in such cases. *Id.* at 480-81 (internal quotation marks omitted). But nearly all courts, including this court, agree that the "site of the defendant's acts" is a proper venue "because the alleged criminal acts provide substantial contact with the district" to satisfy the interests laid out above. *Id.* at 481; *see also Martinez Guzman v. Second Judicial Dist. Court (Martinez Guzman I)*, 136 Nev. 103, 109-10, 460 P.3d 443, 449 (2020) (holding that "territorial jurisdiction . . . depends on whether the *necessary connections*, as identified in Nevada's statutes, to the location of the court exist") (emphasis added). Under this standard, "necessary connections" exist under NRS 171.030 sufficient to lay venue in Washoe County for the Douglas County offenses because Martinez Guzman's Washoe acts predicated the Douglas offenses. *Martinez Guzman I*, 136 Nev. at 109-10, 460 P.3d at 449. Accordingly, I dissent.

NRS 171.030 provides that "[w]hen a public offense is committed in part in one county and in part in another or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties, the venue is in either county." California's analogous intercounty venue statute is nearly identical to NRS 171.030. *See* Cal. Penal Code § 781 ("[W]hen a public offense is committed in part in one jurisdictional territory and in part in another jurisdictional territory, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more jurisdictional territories, the jurisdiction for the offense is in any competent court within either jurisdictional territory."). California caselaw is therefore persuasive when interpreting NRS 171.030. *City of Las Vegas Downtown Redev. Agency v. Crockett*, 117 Nev. 816, 824-25, 34 P.3d 553, 558-59 (2001) (looking to California law as persuasive authority when interpreting an analogous Nevada statute).

In California, venue is governed by statute, and whether venue is proper under a particular statute is a question of law reserved to the court. *People v. Posey*, 82 P.3d 755, 765 (Cal. 2004). As is relevant here, California courts have interpreted Section 781 to "permit trial in a county where only preparatory acts have occurred." *E.g.*, *People v. Simon*, 25 P.3d 598, 617 (Cal. 2001). These preparatory acts need not constitute an element of the offense (e.g., criminal intent) to justify venue under the statute. *People v. Thomas*, 274 P.3d 1170, 1175 (Cal. 2012). Thus, venue was proper under Section 781 where (1) criminal conduct in the forum county was preparatory to later assault of an officer during a police chase in another county, *Simon*, 25 P.3d at 603, 617; (2) loading the victim and her belongings into defendant's car in the forum was preparatory to murder in

another county, *People v. Crew*, 74 P.3d 820, 834 (Cal. 2003); and (3) kidnapping in the forum was preparatory to subsequent murder in another county, *People v. Abbott*, 303 P.2d 730, 735-36 (Cal. 1956). Most analogous to this case is *People v. Price*, wherein the defendant burglarized a home in Humboldt County, California, and stole a revolver. 821 P.2d 610, 634-35 (1991). He then drove to Los Angeles County and used that stolen revolver to shoot and kill the victim, before returning to Humboldt County to commit another burglary, robbery, and murder. *Id.* The court held that venue was proper in Humboldt County for the Los Angeles County murder under Section 781 because "the jury could reasonably infer from the[ ] facts that defendant committed acts in Humboldt County that were preparatory to the murder [in Los Angeles County]." *Id.* at 640.

As the majority notes, most jurisdictions hold otherwise and require that an essential element or "overt act" of the charged offense must have occurred in the forum to lay proper venue there. *Addington v. State*, 431 P.2d 532, 540 (Kan. 1967). But the majority ignores the key distinction between those jurisdictions and California—states following the majority approach have a constitutional guarantee limiting venue in criminal cases, while California does not. *Posey*, 82 P.3d at 765 (reasoning that the California Constitution does not govern venue); *Addington*, 431 P.2d at 542. And, like California, the Nevada Constitution does not limit criminal venue. *Walker v. State*, 78 Nev. 463, 472, 376 P.2d 137, 141 (1962) (noting that Nevada is not tied down by a constitutional venue guarantee). Criminal venue is therefore governed by Nevada's statutes. *Id.* And in the principal case interpreting venue under modern-day NRS 171.030, *Walker v. State*, this court deemed venue proper in Washoe County because police found the victim's body, jewelry, and murder weapon there, even though the murder

could have occurred in any one of four counties, including Washoe. 78 Nev. at 470-71, 376 P.2d at 141. This court reasoned that even if it knew where the murder occurred, or if the murder occurred partially in Washoe and partially in another county, venue would *still* be proper in Washoe based on the objective connections to that forum. *Id.* at 471, 376 P.2d at 141 ("Even if [the jury] determined that acts resulting in death were committed . . . in two or more counties, of which Washoe County was one, then, under NRS 171.030, venue was properly laid in Washoe County.").

Side-stepping this court's holding in *Walker* and NRS 171.030's plain language, the majority holds that venue is only proper under NRS 171.030 if the State can conclusively show that the defendant *intended* to further the charged offense when he or she took preparatory acts in the proposed forum. This standard is misguided for several reasons. First, a court may never be able to pinpoint the precise moment a criminal defendant formed the intent to commit the crime at issue; instead, the most concrete measures available are the acts themselves. *People v. Carrington*, 211 P.3d 617, 650 (Cal. 2009) (holding that it did not matter whether the defendant took preparatory acts with intent to commit the target offense for purposes of venue under Section 781). Our contacts analysis can only practically derive therefrom, without speculating as to the defendant's intent when taking subject acts. *Id.* (holding that "if preparatory acts occur in one county, those acts vest jurisdiction over the crime [under Section 781] 'even though the intent may have arisen in another county'" (quoting *People v. Bismillah*, 256 Cal. Rptr. 25, 28 (Ct. App. 1989))). Accordingly, our existing caselaw on this point remains the most workable and well-reasoned standard, *see Stocks v. Stocks*, 64 Nev. 431, 438, 183 P.2d 617, 620 (1947) (noting that stare decisis is "indispensable to the due administration of

justice"), and I would follow *Walker* to hold that the court need only conclude that a sufficient connection exists between the offense and the forum county based on the defendant's acts to satisfy NRS 171.030.

Second, any inquiry into the defendant's criminal intent poses a substantive question of guilt, based in fact, that should be asked of the jury at trial, *see Valdez v. State*, 124 Nev. 1172, 1197, 196 P.3d 465, 481 (2008) (noting that the *jury* must find that the defendant had the requisite intent to commit the subject offense); 22 C.J.S. *Criminal Law: Substantive Principles* § 37 (Supp. 2021) (noting that criminal intent is a question of fact and "intent is therefore a question for the jury"), thus rendering the majority's standard in conflict with Nevada law, under which criminal venue is a legal question. *See Martinez Guzman I*, 136 Nev. at 110, 460 P.3d at 450 (holding that venue is a question of law for the court); *Shannon v. State*, 105 Nev. 782, 791, 783 P.2d 942, 948 (1989) (holding that venue under sister-statute NRS 171.020 is a question of law). Posing such an early inquiry into criminal intent also risks an unwarranted acquittal later based solely on improper venue. *Posey*, 82 P.3d at 762. Under the majority's factual standard, if a jury returns a conviction, while also concluding that venue is improper—for example, by finding that the defendant formed intent at a different point in time—then jeopardy has attached and an acquittal is won on a procedural technicality. *Shuman v. Sheriff of Carson City*, 90 Nev. 227, 228, 523 P.2d 841, 842 (1974) (noting that jeopardy attaches when "the accused has been placed upon trial, upon a valid indictment, before a competent court, and a jury duly impaneled, sworn, and charged with the case") (quoting *Ex Parte Maxwell*, 11 Nev. 428, 434 (1876)); *see also Posey*, 82 P.3d at 762 ("[U]nless the jury is instructed to return a separate [finding] on the issue of venue before returning

a . . . verdict, a [jury] finding that the proceeding has been brought in an improper venue can result in an unwarranted acquittal, rather than in a new trial in an authorized venue." (second alteration in original) (quoting *Simon*, 25 P.3d at 618 n.18)).

Third, unlike its sister-statute NRS 171.020, NRS 171.030 does not include an intent requirement, *cf.* NRS 171.020 ("Whenever a person, *with intent to commit a crime*, does any act within this State in execution or part execution of such intent, which culminates in the commission of a crime, either within or without this State, such a person is punishable for such crime in this State . . . .") (emphasis added); well-worn canons of construction establish that the expression of this requirement in a statute that is *in pari materia* necessarily implies the absence of the same in NRS 171.030. Finally, the majority's approach is unworkable with and contrary to the Legislature's purpose in enacting criminal laws with territorial reach ending only at state lines. *See Shannon*, 105 Nev. at 792, 783 P.2d at 948 (interpreting NRS 171.020 to vest Nevada with jurisdiction over crimes "whenever the criminal intent is formed and *any act* is accomplished in this state"). The Legislature enacted NRS 171.030 to enable venue in multiple counties within Nevada because no practical reason exists to conduct multiple trials and risk inconsistent results when an offense(s) is sufficiently connected to a single forum to lay venue there. *See* 1873 Nev. Stat., ch. LIII, § 1714, at 471; *Martinez Guzman I*, 136 Nev. at 109-10, 460 P.3d at 449 (noting that "Nevada's statutes," including NRS 171.030, modified the former common law rule against prosecuting a crime unless it occurred entirely within the forum). This is to say nothing of the level of extreme anguish communities, victims, victims' families, and criminal defendants face at the prospect of the sort of duplicative proceedings the

majority's approach would foster. *See People v. Gholston*, 464 N.E.2d 1179, 1191 (Ill. App. Ct. 1984) (noting the "extreme trauma" that a victim must undergo by testifying at multiple court appearances spread over months or years).

There is no legal or practical demand for such a result here because sufficient connections exist between the Douglas offenses and Washoe to lay venue in the latter county under NRS 171.030. Martinez Guzman confessed to committing burglary and murder in Douglas using a revolver that he stole in Washoe. But for obtaining the revolver in Washoe, he could not have committed the Douglas offenses. Then, after perpetrating two residential burglaries in Douglas with the gun that he obtained during his second Washoe burglary—which firearm he stole only after surveying the Davids' property during his first burglary—Martinez Guzman returned to Washoe where he replicated the Douglas offenses by burglarizing the Davids' home a third time and killing both its occupants. All the while, Martinez Guzman drove the same BMW sedan to and from Washoe and Douglas counties to commit this veritable crime spree. Martinez Guzman's preparatory acts to the Douglas offenses occurred almost entirely in Washoe, but the majority demands that the court dice this continuous crime spree into distinct pieces fit for two trials in two separate counties. This is legally unnecessary and an unfair imposition on the victims' families and the court system; Martinez Guzman's Washoe acts suffice to satisfy NRS 171.030's requirements and lay venue in Washoe for the Douglas offenses.

## II.

In any case, even under the majority's purported standard, venue in Washoe is appropriate here. As a threshold matter, it is unclear whether the majority fashioned its standard for the court or the jury to apply, because, as noted above, although venue is a question of law, a defendant's alleged criminal intent is a question of fact. *See Valdez*, 124 Nev. at 1197, 196 P.3d at 481; 22 C.J.S. *Criminal Law: Substantive Principles* § 37 (Supp. 2021). But even applying this tenuous standard, the State alleged sufficient facts for a reasonable jury to find that Martinez Guzman had intent to further the Douglas offenses when he acted in Washoe and thus satisfied the majority's interpretation of NRS 171.030's requirements.

The State must prove venue by a preponderance of the evidence, and it may do so with circumstantial evidence. *Dixon v. State*, 83 Nev. 120, 122, 424 P.2d 100, 101 (1967); *cf. Grant v. State*, 117 Nev. 427, 435, 24 P.3d 761, 766 (2001) (holding that criminal intent can be inferred from conduct). The preponderance of the evidence standard requires the trier of fact "to find that the existence of the contested fact is more probable than its nonexistence." *Abbott v. State*, 122 Nev. 715, 734, 138 P.3d 462, 475 (2006) (internal quotation marks omitted). Here, Martinez Guzman identified the David, Renken, and Koontz properties as potential targets for theft while working for his uncle's landscaping company, which operated in both Washoe and Douglas Counties. Later, Martinez Guzman twice burglarized outbuildings on the Davids' property in Washoe—first a shed and then a trailer—without entering the primary residence and without using a weapon. After auditing the Davids' property during his first burglary, Martinez Guzman returned and burglarized the Davids' trailer; he



specifically identified and stole fishing poles and a firearm case, which contained the revolver. Upon stealing the revolver, Martinez Guzman took it to the Renken and Koontz properties in Douglas, burglarized the primary residences, and shot and killed the occupants. A reasonable jury could infer from these facts that it is more likely than not that Martinez Guzman stole the firearm with intent to move beyond burglary of trailers and sheds and enable entry into the Renken and Koontz primary residences.

But the majority demands more. Indeed, it appears that nothing short of a confession pinpointing Martinez Guzman's motive for stealing the revolver, at the moment he stole it, will satisfy NRS 171.030's requirements under the majority's reasoning. Such an exacting standard swallows the statute whole, and in its absence, the majority provides the common law rule as its substitute. But this conclusion offends the Legislature's power to define and expand venue with its enactment of NRS 171.030, *see Martinez Guzman I*, 136 Nev. at 109, 460 P.3d at 449 (noting that NRS 171.030 modified the common law rule as to intercounty territorial jurisdiction); *Walker*, 78 Nev. at 472, 376 P.2d at 141 (noting that Nevada is not tied down by a constitutional venue guarantee when interpreting NRS 171.030), and increases the potential for inconsistent results in unwarranted separate trials because the State must prosecute the same facts twice. *See In re Rolls Royce Corp.*, 775 F.3d 671, 680 (5th Cir. 2014) (holding that the court must focus on judicial efficiency more when considering a motion to sever claims alongside a motion to transfer partial venue).

Sufficient evidence exists to show that Martinez Guzman acted in Washoe to prepare for the Douglas offenses, and applying either of the

above standards, venue is therefore proper in Washoe under NRS 171.030. For these reasons, I respectfully dissent.

_____, J.
Pickering

I concur:

_____, J.
Parraguirre

SUPREME COURT
OF
NEVADA

(O) 1947A